## TOLEDO (city) v WAGNER

Ohio Appeals, 6th Dist, Lucas Co

Decided May 24, 1937

Martin S. Dodd, Director of Law, Toledo, and M. W. Green, for appellant.

Dan McCullough, Toledo, for appellees.

## OPINION

By OVERMYER, J.

On February 5, 1937, appellees, Joe Wagner and seven others, were arrested and prosecuted in the Criminal Division of Municipal Court of Toledo, Ohio, on a warrant charging them with loitering in a gambling house known as the Buckeye Social Club, at 224 Superior Street in said city, in violation of §1000 of the Toledo Code of 1919. The eight defendants were all charged in the same affidavit with the same offense, were prosecuted together and were all found guilty and fined.

The defendants appealed to the Common Pleas Court, where the judgment of conviction as to all defendants was reversed and the defendants ordered discharged. The appellant, the city of Toledo, prosecutes an appeal in this court to reverse the judgment of the Common Pleas Court. The errors assigned are the interpretation of §1000 of the Toledo Code by the court; error in reversing the judgment of the Municipal Court; and error in holding that the judgment of conviction is not sustained by the evidence.

Section 1000 of the Toledo Code reads as follows: "Sec. 1000. Loitering in Bar Rooms, etc. It shall be unlawful for any person to be found loitering about any common bar-room, dram-shop, gambling house or house of ill-fame, or wandering about the streets, either by night or day, without any lawful means of support, or without being able to give any satisfactory account of himself."

No opinion was written by the lower court but we are advised in the briefs that the Common Pleas Court held that that portion of the section which reads: "It shall be unlawful for any person to be found loitering about any common bar-room, dram-shop, gambling house or house of ill-fame" was not separate and divisible from that portion immediately following, which reads: "or wandering about the streets, either by day or night, without any lawful means of support, or without being

able to give any satisfactory account of himself." The court was of the opinion, and held, that to sustain a conviction in this case the city must show not only that the accused loitered in a gambling house, but also that they were without any lawful means of support. No evidence was offered on this latter question, and the city contends it was not required to do more than show that the accused loitered in a gambling house, that is that the first part of §1000 of the Toledo Code forbids loitering in certain named places and the second part forbids and makes a separate offense the act of a person wandering about the streets by day or night when he has no lawful means of support, or is unable to give a satisfactory account of himself.

It is fundamental that in the interpretation and construction of criminal statutes and ordinances, the primary and paramount rule is to ascertain, declare and give effect to the legislative intent, which is to be gathered from the provisions of the enactment, the title or chapter of the code in which it appears, and the apparent purpose of the enactment as applied to the evil at which it is aimed. Then, if possible, it is to be given such construction as will accomplish that purpose.

Appellees contend that the phrase in §1000 of the Toledo Code "without any lawful means of support," applies to persons loitering in gambling houses, houses of ill-fame, etc, as well as to persons wandering about the streets. The lower court so held. This construction would result in an anomalous situation. It would result in holding that it would be perfectly proper for a person to be loitering in a gambling house or a house of ill-fame, so long as he had any lawful means of support or could give a satisfactory account of himself, but the unfortunate person who had no lawful means of support or could give no satisfactory account of himself would have no business in those places and could be arrested and prosecuted as a loiterer. This construction would be of great help to the proprietors of such establishments, for the city would then be aiding them in having only patrons "who have lawful means of support." The city police could be called to throw out the undesirables.

It seems to this court that a fair reading of §1000 of the Toledo Code, here involved, results in no difficulties. It is evident that two things are sought to be covered in the section, viz.: (1) Loitering in certain places; (2) Wandering about the streets by day or night without any lawful means of support or without being able to give a satisfactory account of one's self.

Counsel for appellees concede that if the official copy of the section showed a semicolon instead of a comma after the word "ill-fame," that the construction claimed by the city would be correct. If the guilt or innocence of the accused under this section is to hang on so slender a thread, or rather, upon so infinitesimal a dot, it is saddening to contemplate upon the tragic consequences that could overwhelm an innocent man by the accidental deposit of a speck by a loitering fly at the proper place on the printed page.

It is conceded that §1000 of the Toledo Code, referred to, is one of a group of ordinances included in a chapter entitled "Public Order and Peace," and that it is the last of a group of three sections under that head. It is clearly aimed at evils which the state and every municipality seek to control and stamp out, viz., gambling, houses of ill-fame, the loitering of persons in such places, and also the wandering about the streets of persons who have no gainful occupations or lawful means of support or who can not account for their purpose in so doing. The keeping of gambling houses is punishable by statute under §13054, G.C.

From the record before us we learn that access to the room where the accused were found and arrested can be gained only after passing through two electrically operated doors, guarded by huskies, who first ascertain whether you are worthy of being admitted to the sacred precinct of the elect; that after you have passed these guards and doors you are admitted to a room about 60 or 70 feet wide and from 100 to 120 feet long; and that in this large room are two pool or billiard tables, a large number of chairs, and on the walls of the room appear charts and markings for horse races being run from day to day. The two police officers who made the arrests of the accused testified to the foregoing facts and also testified that the accused were in that room, some of them standing about and others playing pool or billiards on the two tables. It is apparent that the two pool tables are but a blind or subterfuge, something to be busily and handily engaged at when officers of the law finally get past the electrically operated guarded doors. A room 60x100 feet containing two tables could not well be called a pool room.

It is significant to note that none of the appellees took the stand to testify or make an explanation of their presence in the room.

Legal authorities define the word "loiter" as meaning "to consume time idly," and it is clear that, applying this definition to a criminal ordinance or statute, what would constitute loitering in one place might not constitute loitering at another place. The legislative body named certain places where it shall be unlawful to loiter, and also made it unlawful for a person who has no lawful means of support or who is unable to give a satisfactory account of ▮▮▮▮▮ himself to be wandering about the streets. Both are a proper exercise of the police power in the promotion of the "Public Order and Peace" of the city.

The judgment of the Common Pleas Court is reversed and that of the Municipal Court is affirmed and the cause remanded for execution.

Judgment reversed.

## CONCURRING OPINION

By LLOYD, J.

I concur in the judgment herein because, although municipalities may not have authority to punish loiterers as such, the evident purpose and intent of §1000 of the Toledo Code as applied to the instant case is to prohibit the presence of any person in premises used for purposes of gambling; and the fact of his presence therein, in the absence of some better reason than merely being there is sufficient evidence to warrant a conviction under the ordinance.

No claim is made that this section in its application to the facts disclosed by the record is invalid, the only contention made being that, if instead of a comma, a semicolon followed the word "ill-fame," there would exist no ground upon which to contest or avoid the conviction of appellees.

In other words, the proof must be not only that the appellees were in a "gambling house," but also that each of them was loitering therein "without any lawful means of support or without being able to give any satisfactory account of himself"; and to maintain this contention counsel has presented in his argument and brief an analytical discussion of the grammatical construction to be given to this section.

Counsel ingeniously argues orally and in his brief that: " 'It' is an idiomatic introduction of an infinitive used as a subject, and is not necessary to a discovery of legislative intent. To arrive at the sentence simplified we take 'it' as the simple subject, the passive infinitive 'to be found,' and join 'it' up with the predicate verb 'shall be,' and the predicate adjective 'unlawful.'

"We come then to the qualifications of the sentence simplified. 'Unlawful,' and 'shall be,' are modified by the preposition 'for,' and the noun object 'person,' which is in turn modified by the adjective 'any.'

"So we have now ascertained to what person or classes of persons the ordinance applies, and we now come to a discovery of where the ordinance applies. We find that the passive infinitive 'to be found' is modified by two participles, 'loitering' and 'wandering.' The participle 'loitering' is modified by the preposition 'about' and the four nouns: 'bar-room,' 'dram-shop,' 'gambling-house' and 'house of ill-fame,' the four constituting a prepositional phrase with four objects, and it in turn being modified by the conjunction 'or,' which is 'and' in the law, and the adjectives 'any' and 'common.'

"We find the participle 'wandering' is modified by the preposition 'about,' and the object of the preposition 'streets' which in turn is modified by the article 'the.'

"So we have now ascertained to whom the ordinance applies, and where; and we come now to a discovery of when.

"We find that the passive infinitive 'to be found' is modified by the adverbial prepositional phrases made up of the correlative conjunction 'either or' which is modified by the prepositional phrase 'by night' and the prepositional phrase 'by day'; and the other conjunction 'or,' which is modified by the prepositional phrase 'without means,' which in turn is modified by the adjective 'lawful,' and the prepositional phrase 'of support,' which is used as an adjective. The conjunction is also modified by the preposition 'without,' the gerund 'being' used as the object of the preposition, and the adjective 'able,' which in turn is modified by the infinitive 'to give,' which modifies all, and is modified by the noun 'account,' which is the object of the infinitive, and the adjective 'satisfactory,' and the prepositional phrase used as an adjective 'of himself.'

"So from all of the foregoing, we must conclude that the ordinance in question applies to a person in any of the enumerated places, and when he is without lawful means of support or without being able to give a satisfactory account of himself."

Appended to the brief is a diagram of the claimed "correct grammatical construction of the questioned section." Assuming as correct the questionable grammatical construction of §1000 of the Toledo Code thus advocated, it may be doubted whether any member of the City Council was sufficiently discerning to notice and warn his unheedful comembers of the claimed interpretative consequences that would follow the absence of a semicolon; and except for the unexpurgated clarification so minutely detailed, I would at once have thought, as still I do think, that it was clearly intended to make unlawful the frequenting by any person of premises used for the illegal purpose of gambling.

I cannot therefore agree with counsel for appellees that "the purpose of the present ordinance was to make it possible for the proprietor of any establishment to remove vagrants on his complaint."

Its apparent motivating purpose in regard to gambling houses was to handicap the operation thereof by making it unlawful for persons to be present therein, with no lawful excuse therefor. Any other construction of the ordinance would stamp it as an attempt to help, rather than to hinder, the operation of a gambling house in the conduct of prohibited business, a ridiculous situation, certainly not contemplated or intended by a law-abiding council.

By CARPENTER, J.

In my opinion, the Council of the city of Toledo intended Ordinance §1000 of its Code as a protection to and in furtherance of the peace and good order within the city, and not as an instrumentality by which a gambling house proprietor can enlist the assistance of the police to cast out of his establishment unprofitable customers. Such would be its effect if the courts sustain the contention of the appellees that it applies only to loiterers "without any lawful means of support, or without being able to give a satisfactory account of himself."