**COLUMBUS (City) v ALDRICH**

Ohio Appeals, 2nd Dist., Franklin Co.

No. 3449. Decided Jan. 23, 1942.

Roland G. Allen, Police Prosecutor, Columbus, for plaintiff-appellee.

Wardlaw, Gertner & Armstrong, Columbus, for defendant-appellant.

## OPINION

By GEIGER, PJ.

This cause had its inception in the Municipal Court, Criminal Division.

The defendant-appellant was charged under §11083 of the codified ordinances of the city. That section in so far as it relates to this case is a description of "suspicious persons" and prescribes that any person found loitering about any barroom, gambling house, pool room, house of ill fame or gaming device, or found wandering about the streets, either by day or night, without being able to give a reasonable and satisfactory account of himself * * * shall be deemed and held to be a suspicious person, and on conviction thereof shall be fined as therein provided. The affidavit was to the effect that one Oliver Aldrich, on or about the 3rd day of November, A. D. 1941, at the City of Columbus, County of Franklin and State of Ohio, did unlawfully loiter and wander about a public place, beer place on Main Street, at Vinton Alley, without being able to give a satisfactory account of himself.

On November 10th the cause came on for hearing and the defendant was found guilty as charged and the Court sentenced him to pay a fine of $50.00 and costs.

A motion for new trial was filed and overruled and a notice of appeal given to this Court upon questions of law.

The assignment of errors is to the effect,

(1) That the judgment was manifestly against the weight of the evidence;

(2) That it is contrary to law and that the Court erred in overruling defendant's motion for directed verdict;

(3) In overruling the defendant's motion for acquittal;

(4) In admitting evidence offered by the City;

(5) And for other errors complained of.

The prosecuting witness, a police officer, testified in substance that upon the day in question he saw the defendant at 276 East Main Street at 9:30 P. M., sitting with the man now indicated as his attorney, and with a girl, Helen Tipton, and two other men, one of whom was Miller, the proprietor of the place, which seems to be conceded to answer to the designation "barroom". The police officer testifies that Helen Tipton was a woman of bad repute; that he stepped to the door of the cafe and motioned the defendant to come to the door, which he did, together with his attorney. Both defendant and the attorney protested against the action of the officer, claiming that the defendant and the attorney were sitting quietly in the cafe, conversing on business matters. As to his "loitering" about the place, the officer testified that the defendant had hung around the vicinity for the past four years; that he was never gainfully employed except for a certain short period; that he frequently saw him at the cafe in question, that being his hang-out, and that Helen, the woman, also loitered about the same place, claiming to be a cook at the place;

that he had often seen this woman about the place in the evening; that he had seen her about the street and that place practically every night for a year, but that she had been working all the year at the Miller cafe.

When the officer called defendant to the door, he had seen him seated in the place probably three or four minutes. He testifies that the Court had forbidden Aldrich to be in the place. After the conversation at the door and some dispute as to the officer's right to arrest the man, the wagon was called and he was taken to jail.

The City then rested, and the attorney made a motion that the charges be dismissed on the ground that the arresting officer had admitted that he saw the defendant in a man's place of business talking to a girl employee there. Counsel based his motion on other matters, concluding that he failed to see anything that occurred which the prosecuting witness testified to that would constitute his action as a suspicious person. The Court overruled the motion. The defendant testifies to the transaction substantially as did the officer. stating that he had gone into the cafe to talk with the attorney about arranging for his fee and the bond in another case. The defendant on cross-examination admitted that he had been convicted before, but claimed that he was then working for a Mr. Zeigler. The defendant gave an account of his working intermittently at other places, but frequently being idle. The Tipton girl testified that she worked at the Miller Grill, and that at the time the officer arrived the defendant had just walked inside and had ordered a drink and a package of cigarettes, and that Mr. Miller was getting him the cigarettes when the officer came to the door. The officer did not come inside.

Mr. Gertner, the attorney testified to the transaction at some length, and to the altercation between him and the officer in protest against the arrest.

Counsel for appellant says that the question before the Court is whether the defendant, having been in the beer place for a period of not more than four minutes for the purpose of discussing fees and bonds, with his attorney, so "loitered" as to be a suspicious person. It is asserted that business was being properly discussed by the defendant and his attorney, and that there was no "dallying and no loafing, no spending of time idling". Counsel asserts that it is difficult to understand how one may be guilty of loitering in four minutes, even if he were engaged in idle talk.

The point at issue is whether or not one, under the conditions described in the evidence in this case, can be found to be "loitering". The section of the ordinance describes many conditions, under which a person may be deemed or held to be "a suspicious person". So far as this action is concerned, the first part of the section is invoked as the foundation of the charge. The affidavit is to the effect that the defendant, on or about the 3rd day of November, did unlawfully loiter and wander about a public place described. Manifestly, he could not be found to be wandering, in that he was in a perfectly static condition when discovered by the police officer. So we must confine our investigation as to whether he did unlawfully loiter.

In Vol. 25 of "Words and Phrases", at page 589, et seq., various definitions are given and illustrations of situations that would constitute loitering. "To loiter means 'to be dilatory. to stand idly around, to spend time idly'."

"The word 'loitering' means 'to be slow in moving, to delay, * * * to linger, to spend time idly'."

The dictionary definition is practically the same.

A very interesting discussion of a similar ordinance of the City of Toledo may be found in 57 Oh Ap 160 et seq. The latter case seems to have related largely to the two provisions of the

ordinance, "without any means of support" or "without being able to give any satisfactory account of himself". Neither of these provisions has application to the case at bar. It is true the affidavit states that the defendant loitered about the place in quesion "without being able to give a satisfactory account of himself". The matters presented to the Court of Appeals of Lucas County called for lengthy and in some cases abstruse discussions of the question at issue, by three separate judges of the Court of Appeals, each concurring in the conviction, but each giving an individual discussion of the case. We do not find the question involved in this case so complicated as that developed in the Lucas County case, as it exclusively relates to whether or not the defendant was "loitering". The police officer testifies that he had only discovered him four minutes before the arrest. This would not indicate that he  could be justly said to be loitering. He gave the excuse that he was in the barroom for the purpose of consulting his attorney.

The charge is that he was loitering on a particular day set out in the affidavit, and the evidence is that it was then 9:30 in the evening. We do not believe that the ordinance permits an accumulation of periods of loitering extending over several years as testified to by the prosecuting witness, to so extend the actions of defendant as to constitute an accumulation of periods of idleness to support a conviction of loitering on a definite day and evidence of a definite hour.

Neither are we of the opinion that the fact that the defendant had for years been leading an idle life and had been frequently incarcerated in various jails throughout the state, would constitute the brief period of four minutes into a period to be described by the term "loitering"; nor can we say that the fact that he had chosen an unusual place

in which to consult his attorney about legitimate legal matters would constitute him a loiterer; nor would the choice of his companions make this offense complete unless that offense were charged in appropriate words of the ordinance, which was not done. Possibly the trial judge had personal information as to the shiftlessness of this individual, and naturally desired to protect the public against his obnoxious presence. If, however, a period of four minutes consultation in a barroom would constitute loitering, and thereby make him in the words of the statute "a suspicious person" the career of such an individual would be subject to constant harrassment by an officer who may have taken a dislike to him, and may wish to rid his beat of his presence. The freedom of locomotion and choice of companions is not to be interfered with unless the provisions of the ordinance have been proved. We do not feel that the evidence in this case, on the charge made, is sufficient to support a conviction and are of the opinion that the court should have sustained the motion of the defendant made at the termination of the evidence.

We, therefore, order that this motion be sustained and the defendant discharged.

HORNBECK and BARNES, JJ., concur.