No. 35,754

THE CITY OF OLATHE, *Appellee*, v. R. E. LAUCK, MICHAEL WALSH, CARLETON COOPER, T. T. HARTMAN, C. K. LAFOON, H. V. YODER, JOSEPH D. JOHNSON, GEORGE H. DROGE and ROBERT F. GRAY, *Appellants*.

(135 P. 2d 549)

 Opinion
filed April 10, 1943. 

*William H. McCamish*, of Kansas City, argued the cause for the appellants.

*Howard E. Payne*, city attorney, argued the cause, and *Clayton Brenner*, county attorney, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: The appellants were convicted in the police court of the city of Olathe for violating a city ordinance which reads thus:

"SECTION 277. *Loitering and Loafing on Street.* It shall be unlawful for three or more persons to assemble, except at a public meeting, on any sidewalk, street, alley, or other place within the City of Olathe, Kansas, and there conduct themselves in a manner annoying to persons passing by, or to the occupants of neighboring or adjacent buildings, or in any way interfere with the travel on, or free use of any sidewalk or street, or for any person to loaf or loiter on any public corner, or street, or upon any sidewalk, in the business portion of the City of Olathe, Kansas. It shall be the duty of the city marshal and of all police officers of the city to enforce the provisions of this ordinance and to arrest anyone habitually violating the same, and anyone found loafing or loitering on any public street or corner who shall fail or refuse promptly to move on when notified so to do. Any person who shall violate

any of the provisions of this section, shall, on conviction thereof be fined in any sum not exceeding ten dollars."

On or about October 18, 1941, a band of Jehovah's Witnesses appeared on the streets of Olathe and began to offer their religious literature to passers-by. They offered it for sale and also in free distribution. About a dozen of them were arrested on separate complaints, a typical one of which reads:

"That at the City of Olathe, Kansas, on or about the . . . day of October, 1941, one . . . then and there being did then and there unlawfully and willfully loiter upon the public streets and sidewalks in the business portion of the City of Olathe, Kansas, and did there conduct themselves in a manner annoying to persons passing by and to the occupants of adjacent buildings, and did interfere with the travel on or free use of the sidewalks, and streets of said city, and did habitually violate Section 277 of the 1935 Revised Ordinances of Olathe, Kansas, notwithstanding that the said defendant was properly notified to move on and discontinue the violation of said ordinance, contrary to the provisions of the ordinances of said city in such cases made and provdied. Each signed, 'T. J. Brunk.'"

Following their conviction in police court, appeals were promptly taken to the district court. One defendant demanded a separate trial. Ten of them agreed to be tried "separately before a single jury." Pursuant to that novel arrangement, the cause was tried *de novo*. Evidence *pro* and *con* was adduced and the jury returned separate verdicts of guilty against each of the ten defendants. Their joint motion for a new trial was overruled; each defendant was fined $10 and costs; and the matter is brought here for review. Various errors are urged, but few of them will need attention.

A critical examination of the ordinance shows that two offenses were included within its terms; the *first* is one which may be committed by *three or more persons* who shall assemble on any sidewalk or street and conduct themselves in a manner annoying to persons passing by, or to occupants of neighboring buildings, or in any way interfere with the travel on or free use of the sidewalk or street.

The *second* offense included within the terms of the ordinance is that it is unlawful "for any person to loaf or loiter on any public corner, or street, or upon any sidewalk, in the business portion of the city."

It takes the assembling of three or more persons and their action in unison as denounced in the ordinance to constitute the first misdemeanor. The second offense denounced by the ordinance may be committed by a single individual.

An examination of the record fails to show any substantial evidence that three or more of these appellants did assemble on any street or sidewalk and thus commit a violation of the ordinance. There was some evidence that certain unidentified persons, on several unidentified occasions stood on the sidewalk. A witness for the city testified:

"They (unidentified) interfered with every person who went down the walk, in some way or another. They either made them have to go around other persons or put something up in front of them and made them dodge back.

"Q. These defendants that are specifically charged here are: R. E. Lauck, Michael Walsh, Carlton Cooper, T. T. Hartman, C. K. Lafoon, H. V. Yoder, Joseph D. Johnson, George D. Droge, Robert F. Gray and George R. Uhl. I will ask you to tell the court and jury whether or not you recognize any of these defendants here in the court room? A. There is three of them there I recognize as being there (indicating)."

The same witness was asked if he could identify any of the defendants who were in front of his place of business. He pointed to two of the group, but the record does not show which of the ten defendants were indicated.

There was considerable testimony for the city of the same tenor, but there was no evidence to show that any three or more of the defendants who on October 18, 1941, or at any other time, did conduct themselves in a manner annoying to persons passing by or to the occupants of adjacent buildings, or that any three of them did interfere with the travel on or free use of any sidewalk or street. That feature of the ordinance clearly intends to define a penal offense or misdemeanor which may be committed by three or more persons; and if we should concede that there was testimony that certain one or two identified single defendants did conduct themselves in a manner annoying to persons passing by, or to the occupants of adjacent buildings, or did interfere with the travel or free use of any sidewalk or street, it would not avail to sustain the convictions of these ten defendants.

Turning next to the *second* misdemeanor included within the scope of the ordinance—that of loafing or loitering on any public corner, or street, or upon any sidewalk, in the business portion of the city—it will be observed that the ordinance does not define loafing or loitering, which prompts counsel for defendants to argue that this feature of the ordinance is void for uncertainty. (See 19 R. C. L., 810, 811; 37 Am. Jur., 785; 2 McQuillan on Municipal Corpora-

tions, 2d ed., sec. 687.) Passing that point, however, and looking into standard authorities for definitions of loafing and loitering, Black's Law Dictionary (3d ed.) defines "loiter" thus: "Loiter. To stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind." Webster's New International Dictionary, 2d ed., defines the verb "loaf" to mean "to spend time in idleness; to lounge or loiter about or along." In 25 Words and Phrases, perm. ed., 435 and 589-591, the terms "loiter," "loaf," and "idle" are used synonymously, but may not be applied to deserving persons who may be temporarily unemployed. And see, also, *Territory of Hawaii v. Anduha,* 48 F. (2d) 171.

It will not be gainsaid that within the fair scope of the foregoing definitions of loafing and loitering, there was not a scintilla of evidence to support a conviction of any one of these appellants for violating the loafing or loitering provision of the city ordinance. Indeed, all the testimony for the prosecution as well as for the defense was that the appellants began to set about the errand for which they had come to town, which was to sell or give away their religious literature, and that they busied themselves therewith until their activities were halted by their arrest. Loafing or loitering defendants certainly were not, and neither on this feature of the ordinance nor on the one first noted above was there any evidence to justify their conviction. In view of this conclusion, there is no need to consider the other objections to the judgment urged by counsel for defendants.

The judgment of the district court is reversed with instructions to discharge the defendants.

PARKER, J., not participating.