THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IRVING FEINER, Appellant.

Submitted January 9, 1950; decided March 2, 1950.

*Sidney H. Greenberg* for appellant. I. The People did not prove beyond a reasonable doubt that defendant committed the acts charged. II. The conviction of defendant violates the First and Fourteenth Amendments of the Federal Constitution. (*Lovell* v. *City of Griffin,* 303 U. S. 444; *Hague* v. *C. I. O.,* 307 U. S. 496; *Grosjean* v. *American Press Co.,* 297 U. S. 233; *Thomas* v. *Collins,* 323 U. S. 516; *Bridges* v. *California,* 314 U. S. 252; *West Virginia State Bd. of Educ.* v. *Barnette,* 319 U. S. 624; *Thornhill* v. *Alabama,* 310 U. S. 88; *Murdock* v. *Pennsylvania,* 319 U. S. 105; *People* v. *Nixon,* 248 N. Y. 182.) III. Defendant was entitled to use a loud-speaker. (*Saia* v. *New York,* 334 U. S. 558.) IV. In the absence of the persons being present at the time the alleged characterizations were made, there is no basis for convicting defendant for the use of such language, even if it may be assumed that such language was used. (*Cantwell* v. *Connecticut,* 310 U. S. 296; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568; *People* v. *Phillips,* 245 N. Y. 401; *Shankroff* v. *La Guardia,* 61 N. Y. S. 2d 839, 247 App. Div. 785; *Schenck* v. *United States,* 249 U. S. 47; *Herndon* v. *Lowry,* 301 U. S. 242; *Terminiello* v. *Chicago,* 337 U. S. 1.) V. The conviction also violates section 8 of article I of the State Constitution. (*People* v. *Kieran,* 26 N. Y. S. 2d 291; *People* v. *Nixon,* 248 N. Y. 182.) VI. The sentence is excessive.

*Reuben T. Uretsky* for New York State Civil Rights Congress, *amicus curiæ*, in support of appellant's position. I. The conviction directly abridges the basic constitutional rights of freedom of speech and freedom of assembly guaranteed by the Fourteenth Amendment of the United States Constitution and section 8 of article I of the State Constitution, and must be reversed. (*Schneider* v. *State* [*Irvington*], 308 U. S. 147; *Hague* v. *C. I. O.,* 307 U. S. 496; *De Jonge* v. *Oregon,* 299 U. S. 353; *Terminiello* v. *Chicago,* 337 U. S. 1; *People* v. *Muller,* 286 N. Y. 281; *Thomas* v. *Collins,* 323 U. S. 516; *Bridges* v. *California,* 314 U. S. 252.) II. Appellant's constitutional rights to procedural due process under the Fourteenth Amendment have been violated by the application in this case of section 722 of the Penal Law in such manner that no ascertainable standard guilt for the offense is provided. (*Winters* v. *New York,* 333 U. S. 507; *Connolly* v. *General Constr. Co.,* 269 U. S. 385; *Small Co.* v. *American Sugar Refining Co.,* 267 U. S. 233; *United States* v. *Cohen Grocery Co.,* 255 U. S. 81; *United States* v. *C. I. O.,* 335 U. S. 106.)

*Jesse E. Cantor, District Attorney* (*Dan J. Kelly* of counsel), for respondent. I. The evidence clearly shows acts and language and possible disturbances tending to a breach of the peace. II. The police officers were confronted with a tense situation. III. The duty rested on the Court of Special Sessions to determine the accurate version among conflicting stories of witnesses for the People and for defendant and its decision should not be disturbed. (*People* v. *Tepperman,* 151 Misc. 810; *People* v. *Yergan,* 164 Misc. 83; *People* v. *Arcidiaco,* 156 Misc. 461.) IV. It is immaterial whether any breach of the peace actually occurred or whether the persons affected by defendant's conduct were actually annoyed. (*People* v. *Yergan,* 164 Misc. 83; *People* v. *Lipschitz,* 120 Misc. 633; *People* v. *Squires,* 135 Misc. 214; *People* v. *Berkowitz,* 132 Misc. 744; *People* v. *Hipple,* 263 N. Y. 242; *People* v. *Nesin,* 179 App. Div. 869; *People* v. *Galpern,* 259 N. Y. 279; *People* v. *Nixon,* 248 N. Y. 182; *Whitney* v. *California,* 274 U. S. 357; *Hague* v. *C. I. O.,* 307 U. S. 496.) V. There has been no violation of the constitutional rights of defendant nor does his conviction violate either the Fourteenth or the First Amendment of the Federal

Constitution. (*People* v. *Pieri,* 269 N. Y. 315; *People* v. *Arcidiaco,* 156 Misc. 461; *People* v. *Berman,* 156 Misc. 463; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568.) VI. The use of a loud-speaker was never an issue in the trial of defendant's case in the Court of Special Sessions of the City of Syracuse and his conviction in that court.

CONWAY, J. Defendant was convicted of the offense of disorderly conduct (Penal Law, § 722) in the Court of Special Sessions of the City of Syracuse. The conviction was affirmed by the Onondaga County Court and the case is here by permission of a Judge of this court.

On the evening of March 8, 1949, defendant, Irving Feiner, a student at Syracuse University, was addressing a group of people on South McBride Street, near Harrison Street, in the city of Syracuse. A complaint concerning the gathering was received over the telephone by the police department and two officers, Flynn and Cook, were dispatched to the scene to investigate. That was about 6:30 P.M. Officer Flynn, an acting sergeant, arrived in a police car about twelve or thirteen minutes later and found officer Cook already there in another police car. They observed a crowd of approximately seventy-five or eighty people, both colored and white, gathered near defendant, who was standing on a large wooden box, situated between the sidewalk and a parked automobile on South McBride Street. The automobile was about forty or forty-five feet from the corner and the crowd extended to about twenty or twenty-five feet from the corner. The crowd covered an area of about fourteen by thirty-five feet.

Defendant was speaking into a hand microphone which was attached to loud-speakers on the automobile. Between five and ten associates of defendant were present. They distributed circulars and helped set up the sound amplification apparatus. Defendant was exhorting his listeners to attend a meeting to be held that night in the Syracuse Hotel. In the course of his remarks, defendant " called Mayor Costello [of Syracuse] a champaign [*sic*] sipping bum and President Truman a bum. He referred to the American Legion as Nazi Gestapo agents — he also said the fifteenth Ward was run by corrupt politicians and that horse rooms were operating."

The crowd gathered by defendant filled the space between the curb and the building line on the sidewalk. Pedestrians, trying to use the sidewalk, were forced to step out to walk in the street. Some of the crowd spread out onto the street, and, since traffic was passing at the time, the officers attempted to get the people back on the sidewalk. As officer Cook approached the scene earlier in the police car, he " had to slow down pretty near to a stop at that point " because of the pedestrians in the street.

Officer Flynn further observed that there was " angry muttering " throughout the crowd and he had trouble getting through it. The crowd was restless. There was some pushing and shoving. They were milling around back and forth. Remarks were being made in the audience both for and against the speaker. " Some were calm and some were not — they were discussing the speech pro and con." There was, however, no disorder. After telephoning the police station from a nearby store, Flynn returned to the police cars with Cook and then they crossed the street and mingled with the crowd.

Defendant was speaking in a loud, high-pitched voice and was appealing to the colored people in particular. Defendant said that the Negro people did not have equal rights and that they should rise up in arms and fight for them. Flynn got the " impression " that defendant was trying to arouse the Negro people against the whites. Defendant's statement that the Negro people should rise up in arms and fight " stirred up a little excitement " and the crowd " seemed to mill around a little then." One man approached the officers and said " if you don't get that ' son of a bitch ' off, I will go over and get him off there myself." Other persons made remarks about the police force not being able to handle the crowd and that " they did not see why they had to put up with that kind of stuff in the neighborhood."

At this point, Flynn " figured it had gone far enough ". The crowd was " getting to the point where they would be unruly." Although there had been no actual disturbance, Flynn said, " we stepped in to prevent it from resulting in a fight." Flynn approached the defendant, not for the purpose of arresting him, but to get him to break up the congregation. He asked defendant to get down off the box but the latter " just looked, and

kept right on talking to the crowd.'' Flynn waited a minute and then demanded that he get down, but defendant still refused. The crowd, which was now quiet, was pressing closer around defendant and the officer. Finally, Flynn told defendant he was under arrest and reached up to take hold of him. Defendant stepped down off the box and announced over the microphone that '' 'the law has arrived, and I suppose they will take over now.' '' In all, Flynn had asked defendant to get down three times over a space of four or five minutes. Officer Flynn had been present at the scene about fifteen or twenty minutes and Cook about twenty-five or thirty minutes. Defendant, of course, had been speaking for some time longer than a half hour.

On his case, in addition to character witnesses from the faculty of Syracuse University, defendant introduced evidence controverting the officers' testimony concerning the size and temperament of the crowd, the degree of obstruction of the sidewalk and street, the substance of the talk, and defendant's response to the officer's request. Portions of this testimony corroborated elements of the People's case; portions were not believed by the Trial Judge.

On the evidence, the Special Sessions Judge found defendant guilty of disorderly conduct under section 722 of the Penal Law. In section 722, the Legislature has enumerated certain acts which, if committed with intent to provoke a breach of the peace, or which, even without such intent, may reasonably occasion a breach of the peace, render the actor guilty of disorderly conduct. The section provides in part as follows:

'' Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

'' 1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior;

'' 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others;

'' 3. Congregates with others on a public street and refuses to move on when ordered by the police; * * *.''

Defendant was charged with and found guilty of a violation of subdivision 2 of section 722, but it is settled that the judg-

ment of conviction in a case such as this will be affirmed if the evidence establishes a violation of any of the subdivisions of the section. (*People* v. *Hipple,* 263 N. Y. 242, 244.)

In finding the defendant guilty, the court, in an oral decision addressed to defendant, said: " * * * You had a perfect right to appear there and to use that implement, the loud speaker. You had a right to have it in the street. There is no question about that. * * * " The court further assumed that defendant had a legal right to refer to Mayors Costello and O'Dwyer, President Truman and the American Legion in abusive and disrespectful terms. The Trial Judge then reviewed the evidence, pointing out the size of the crowd gathered by defendant, the blocking of the sidewalk, the necessity for pedestrians to walk out on the roadway and the unrest and hostility engendered in a portion of the crowd. He continued:

" Now, under those circumstances I think the officers were fully justified in feeling that a situation was developing which could very, very easily result in a serious disorder. I think the officers were very patient up to that time. I think that on the basis of the evidence here that you deliberately agitated and that in every way that you could, you goaded these officers to action. * * *

" * * * I think they [the police officers] had every reason in the world to believe, on the basis of the facts that they have testified to, that something serious was about to happen. And then the Officer asked you to get down off the box, and he asked you again, and then one of the Officers says he took you by the arm or reached for you. Three times you had to be requested to get off the box. I think that all those facts that have been testified to here are sufficient to sustain the charge of Disorderly Conduct. * * *

" I find on the facts that you are guilty as charged in the Information and Warrant."

The findings contained in the decision of the Trial Judge sufficiently establish that defendant, under section 722 and our cases construing it, was guilty of disorderly conduct — putting aside, for the moment, constitutional objections to the conviction.

The statement made by the Trial Judge to defendant that " on the basis of the evidence here * * * you deliberately agi-

tated and * * * in every way that you could, you goaded these officers to action '' was clearly a finding that defendant, by his conduct under the circumstances, intended to provoke a breach of the peace. Certainly, defendant acted '' in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others '', within the meaning of subdivision 2, and such conduct, in conjunction with an intent to provoke a breach of the peace, is sufficient in itself to establish the offense of disorderly conduct. The defendant's conduct, at the very least, was such that it tended to disturb the public peace and quiet and to occasion a breach of the peace. That, under our cases, is sufficient. (*People* v. *Nixon,* 248 N. Y. 182, 188–189; *People* v. *Galpern,* 259 N. Y. 279, 281–282, 284–285; *People* v. *Hipple, supra*; *People* v. *Monnier,* 280 N. Y. 77, 78–79; *People* v. *Edel,* 286 N. Y. 637.) It is clear, apart from constitutional objections, that defendant's refusal to accede to the requests of the police officer within the scope of his lawful authority justified defendant's arrest and subsequent conviction for disorderly conduct. (*People* v. *Nixon, supra*; *People* v. *Galpern, supra.*)

Defendant's main contention on this appeal is that his conviction of the offense of disorderly conduct violates the right of freedom of speech guaranteed by our Federal and State Constitutions. We assume that the constitutional question was properly raised below, even though defendant's attorney did not specifically move on the record to dismiss *on that ground,* for both courts below considered it.

It is perhaps laboring the obvious and oft-repeated to state that the constitutional guarantee of freedom of speech is not an absolute right to be indiscriminately exercised under all circumstances and conditions. Social welfare requires, in certain instances, reasonable regulation of freedom of speech which, unrestrained, would produce calamitous or undesirable results — not only for the locality and public order but also, in the long run, for the individual involved. The preservation of order and the prevention of disturbance are of prime importance to the State. As was said in *Cox* v. *New Hampshire* (312 U. S. 569, 574 [Hughes, Ch. J.]): '' Civil liberties, as guaranteed by the Constitution, imply the existence of an

organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. * * * ''

In the instant case, we have a situation in which on a public street a portion of defendant's audience became enraged and aroused at his utterances. Others were sympathetic and were present for the specific purpose of assisting and applauding the efforts of the defendant. The crowd became restless and potentially unruly. It filled the sidewalk and spilled out into the adjacent thoroughfare obstructing or impeding both pedestrian and vehicular traffic. An imminent danger of a breach of the peace, of a disturbance of public order, perhaps even of riot, was threatened. Defendant, at the very least, knew of the condition and was heedless of the potential evil consequences. More, as found by the trial court, he deliberately continued in a vein calculated to precipitate those consequences. We do not think, under those circumstances, that defendant had a constitutional right to disregard the police officer's word of warning with impunity and to continue to blare out his provocative utterances over loud-speakers to a milling, restless throng composed of hostile and sympathetic listeners. Where both the audience and the speaker are inevitably proceeding toward an eruption of civil strife — where, indeed, both seem to be working up to a pitch where serious disorder might well be expected — the power and duty of the State to punish the speaker who refuses to desist after appropriate warning is clear.

Justice ROBERTS stated the relevant considerations well in *Cantwell* v. *Connecticut* (310 U. S. 296, 308) as follows: " The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood

to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious. Equally obvious is it that a State may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions. * * * ''

In the instant case, there is no indication that the action of the police officer was taken as a subterfuge or excuse for suppression of defendant's views and opinions. The courts below have found, and we are bound by the finding, that the officer was motivated solely by a proper concern for the preservation of order and the protection of the general welfare, in the face of an actual interference with traffic and an imminently threatened disturbance of the peace of the community.

We are well aware of the caution with which the courts should proceed in these matters. The intolerance of a hostile audience may not, in the name of order, be permitted to silence unpopular opinions. (49 Col. L. Rev. 1118.) The Constitution does not discriminate between those whose ideas are popular and those whose views arouse opposition or dislike or hatred — guaranteeing the right of freedom of speech to the former and withholding it from the latter. We recognize, however, that the State must protect and preserve its existence, and, unfortunate as it may be, the hostility and intolerance of street audiences and the substantive evils which may flow therefrom, are practical facts of which the courts and the law enforcement officers of the State must take notice. Where, as here, we have a combination of an aroused audience divided into hostile camps, an actual interference with traffic and a speaker who is deliberately agitating and goading the crowd and the police officers to action, we think a proper case has been made out, under our State and Federal Constitutions, for punishment.

Defendant's principal, but mistaken, reliance is upon the recently decided case of *Terminiello* v. *Chicago* (337 U. S. 1, 5). There the Supreme Court reversed the conviction of the defend-

ant upon the ground that it might have been based upon certain instructions of the Trial Judge to the jury authorizing a verdict of guilty if defendant's speech stirred the people to anger, invited dispute or brought about a condition of unrest. It there appeared that the speech of Terminiello was delivered in a private hall or auditorium and not upon the public street. In the abstract, no one may disagree with the proposition that a person cannot constitutionally be convicted for doing no more than delivering a speech which stirs people to anger, invites dispute or brings about a condition of unrest. That, however, is not the instant case. Here, the defendant, as indicated above, disrupted pedestrian and vehicular traffic on the sidewalk and street, and, with intent to provoke a breach of the peace and with knowledge of the consequences, so inflamed and agitated a mixed audience of sympathizers and opponents that, in the judgment of the police officers present, a clear danger of disorder and violence was threatened. Defendant then deliberately refused to accede to the reasonable request of the officer, made within the lawful scope of his authority, that the defendant desist in the interest of public welfare and safety.

We conclude that defendant was properly convicted of the offense of disorderly conduct and that his conviction, under the circumstances, does not infringe upon his constitutional right to freedom of speech.

The judgment should be affirmed.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.