THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* NANCY CHOREMI, Appellant.

Argued June 2, 1950; decided July 11, 1950.

*Theodore S. Jaffin, Lawrence S. Greenbaum* and *Louis W. Bookheim, Jr.,* for appellant. I. The information fails to allege the commission of an offense by appellant. (*People* v. *Santiago,* 293 N. Y. 895; *People* v. *Van Why,* 288 N. Y. 659; *People* v. *Sohn,* 269 N. Y. 330; *People* v. *Albow,* 140 N. Y. 130; *Dedieu* v. *People,* 22 N. Y. 178; *People* v. *Leiby,* 184 Misc. 21; *People* v. *Huyck,* 171 Misc. 467; *Sherwin* v. *People,* 100 N. Y. 351; *People* v. *Santoro,* 229 N. Y. 277; *People* v. *Zambounis,* 251 N. Y. 94.) II. There is no proof to sustain the conviction. (*People* v. *Santiago,* 293 N. Y. 895; *People* v. *Reynolds,* 300 N. Y. 616; *People* v. *Phelps,* 189 App. Div. 775; *People* v. *Santiago,* 192 Misc. 72; *People* v. *Taddio,* 292 N. Y. 488; *People* v. *Cooperman,* 279 N. Y. 599; *People* v. *Orr,* 270 N. Y. 193.) III. All that has been shown is that appellant received only the one telephone conversation at her home from Blavier on May 20th. There is nothing in the record to indicate the period of time appellant was at her apartment. It is submitted that the presence of a person at her home for long enough only to receive one telephone call is not evidence of loitering. The word " loiter," though not defined in the Code of Criminal Procedure, has a generally understood meaning and involves an idle waiting around for a period of time. (*People* v. *Berger,* 169 N. Y. S. 319; *City of Olathe* v. *Lauck,* 156 Kan. 637; *City of Columbus* v. *Aldrich,* 69 Ohio App. 396; *State* v. *Badda,* 97 W. Va. 417; *Stephens* v. *Dist. of Columbia,* 16 D. C. App. 279; *People* v. *Santiago,* 293 N. Y. 895; *People* v. *Van Why,* 288 N. Y. 659.)

*Louis Bender* for American Civil Liberties Union, *amicus curiæ,* in support of appellant's position.

*Frank S. Hogan, District Attorney* (*Edwin C. Hoyt, Jr.,* and *Whitman Knapp* of counsel), for respondent. Guilt was established beyond a reasonable doubt. (*People* v. *Goldstein,* 295 N. Y. 61; *People* v. *Fitch,* 282 N. Y. 777; *People* v. *Santiago,* 192 Misc. 72; *People* v. *Santiago,* 293 N. Y. 895.)

Fuld, J. Though there is serious doubt as to the sufficiency of the information filed against defendant (cf. *People* v. *Zamboúnis,* 251 N. Y. 94, 95–96; *People* v. *Santoro,* 229 N. Y. 277, 282–283; *People* v. *Albow,* 140 N. Y. 130, 134), we choose to place our decision upon the ground that there is no evidence in the record before us to establish that she is a vagrant under subdivision 4 of section 887 of the Code of Criminal Procedure.

Concededly, there is nothing in the record except three wiretapped telephone conversations between defendant and Madeleine Blavier — one on May 5, another on May 20 and the third on May 21, 1948 — and one seeks in vain in those conversations for the essential proof of loitering " for the purpose of inducing, enticing or procuring another to commit * * * unlawful sexual intercourse " (Code Crim. Pro., § 887, subd. 4, cl. [c].). While those talks do indicate that defendant may have been intent on granting her favors for a price, there is not the slightest bit of evidence that she committed an act of prostitution or of unlawful sexual intercourse **or** that she loitered any place for the purpose proscribed by the statute.

As the magistrate before whom the case was tried properly ruled, the evidence of defendant's offense of vagrancy " comes down to * * * the alleged telephone * * * [call] of May 20th " that Blavier made to defendant at the latter's apartment. After being told by Blavier that she was " at 55th Street " and had made an appointment " with Rene " and a " friend " of his " for 2:30 today ", defendant simply replied " All right " and " I can be there." Where did the defendant " loiter "? Was it at her home where she was when Blavier called her or was it at 55th Street where the man was to be? Of what did the loitering consist? Where was the evidence of a purpose to induce, entice or procure another to commit an act of sexual intercourse? Suggestive though the conversation may have been of an act of prostitution to be committed in the future, it is our view that it contained naught to indicate that defendant was " loitering " at her home — the act charged against her in the information — for " the purpose of inducing, enticing or procuring another " to commit the prohibited act. Suspicion and surmise there may have been that defendant might thereafter engage in illicit conduct, but neither the one nor the other constitutes that kind of proof which our system of justice demands to support a con-

viction. (See *People* v. *Orr,* 270 N. Y. 193, 196; *People* v. *Sohn,* 269 N. Y. 330, 335.)

Even assuming that one may " loiter " — as that word is used in the criminal statute under consideration (cf. *City of Olathe* v. *Lauck,* 156 Kan. 637, 640; *City of Columbus* v. *Aldrich,* 69 Ohio App. 396, 399–400; see, also, *Stephens* v. *District of Columbia,* 16 D. C. App. 279, 281; *State* v. *Badda,* 97 W. Va. 417, 419; and see, also, Webster's New International Dictionary [2d ed.], p. 1454) — in one's own home, the record is devoid of any proof of such an act. And, since the charge was of " loitering " in her home, we merely note that there is not even an intimation that defendant went to the place on 55th Street, the suggested rendezvous. But even if we were to conclude that there was proof of " loitering ", we find it even more difficult to spell out evidence that defendant loitered " for the purpose of inducing, enticing, or procuring " anyone to have sex relations with her. Quite apart from other considerations, the telephone call was from Blavier to defendant and the alleged appointment was arranged by Blavier and proffered by her to defendant.

In addition, the utter weakness of the case, its thin and meager nature, is emphasized and accentuated by comparing it with *People* v. *Reynolds* (300 N. Y. 616), also a prosecution for vagrancy, though based upon a different clause of subdivision 4. In the *Reynolds* case (*supra*), the conviction depended not only upon wire-tapped telephone conversations but upon evidence by the police that they kept the premises in question under surveillance, that they saw the men and women who had been in the apartment pair off and repair to bedrooms where the lights went off shortly after their entry, that they found them in compromising positions when they made arrests, and that the defendant stated that she was " responsible for everything that took place." (*Reynolds* Record on Appeal, fols. 297, 320, 331–336, 339–340, 365–379, 391, 410–411.)

Contrary to the fears expressed by the minority, the court is not " drawing  *  *  *  distinctions between different modes of commission of the same, essentially criminal act." (Opinion of CONWAY, J., p. 422.) Obviously, *if the act charged against a defendant be proved,* it matters not how defendant committed it or where. In the case before us, there must be a reversal because

the evidence adduced by the prosecution fails to establish that defendant was guilty of the offense charged.

The judgments should be reversed and the information dismissed.

CONWAY, J. (dissenting). The decision of the majority seems to us to rest upon an unduly narrow construction of section 887 of the Code of Criminal Procedure, defining vagrancy. Clause (c) of subdivision 4 thereof, under which defendant was charged in the information, provides that a person is a vagrant who " loiters in or near any thoroughfare or public or private place for the purpose of inducing, enticing or procuring another to commit lewdness, fornication, unlawful sexual intercourse or any other indecent act ". This section is part of a comprehensive series of enactments passed by the Legislature in an effort to stamp out the crime of prostitution, with all its attendant evils, by controlling every facet of the illegal enterprise. (See, e.g., Multiple Dwelling Law, §§ 12, 350–360; Public Health Law, § 343-hh; Penal Law, § 3, subd. 9; §§ 70, 1146, 1148, 2460; Civ. Prac. Act, § 1417.) The law's primary concern is not with punishing the females involved, as is evidenced by the comparatively light punishment provided in section 887 of the code compared to the more severe penalties to which others who make money out of the prostitution of women are subject. Section 887, however, has a vital place in the statutory scheme and is essential to its effective enforcement. The decision here made, we are convinced, restricts section 887 in a manner never contemplated by the Legislature and will undoubtedly hamper our law enforcement officers in their continued attempts to control this social evil.

The majority opinion states that " there is not the slightest bit of evidence that she [defendant] committed an act of prostitution or of unlawful sexual intercourse or that she loitered any place for the purpose proscribed by the statute." We find no requirement in the statute (§ 887, subd. 4, cl. [c]) of proof of an act of prostitution or of unlawful sexual intercourse in order to support a conviction thereunder. The statute makes material the defendant's purpose, not whether she accomplished it. We are here concerned with a provision which is aimed at a preliminary step in the chain of activities, all of which the Legislature, for the common good, has interdicted. The quoted provision of the code

is designed to forbid persons from making themselves available for unlawful sexual intercourse. Basically, the essential element of the offense is the act of the defendant in holding herself forth for the prohibited purpose, i.e., the act of offering to commit unlawful sexual intercourse.

The argument is made that there was here no proof that defendant " loitered " within the meaning of the statute. To reach that conclusion, the majority opinion ascribes to the word " loiters " a strict dictionary definition and ignores the evident intent and purpose of the Legislature. It is commonplace that every statute must be read in the light of the mischief attempted to be remedied. So read, we think that this provision has a meaning and scope beyond the mere dictionary definition of the word " loiter ". Logically, the majority decision would make it incumbent upon the People to prove that a defendant lingered aimlessly or idly about a place or moved in a slow and lagging manner for the proscribed purpose in order to sustain a vagrancy conviction under this section of the code — a conclusion which cannot represent the intent of the Legislature.

The decision thus thwarts the will of the Legislature and puts beyond the reach of the law persons who, in the popular as well as the legal sense, have committed a recognized offense. This decision, moreover, inevitably results in the drawing of unreasonable, untenable and unnecessary distinctions between different modes of commission of the same, essentially criminal act. A female who holds herself forth for the purpose of prostitution on a street corner may be convicted therefor, but a female who performs the same act of holding herself forth in her home over the telephone is now rendered immune from punishment. The Legislature, we submit, could not have intended so incongruous a result. That the Legislature did not so intend was held over thirty years ago in *People* v. *Phelps* (189 App. Div. 775–776), where the court said: " The county judge was of the opinion that in order to sustain a conviction under subdivision 4 of section 887 of the Code of Criminal Procedure, it was incumbent upon the People to ' establish that the defendant was a common prostitute or night walker, that she solicited to the annoyance of the inhabitants or passersby, and that she was there in a public place for the purpose of prostitution.' This was a mistaken view of the law. The proof established that the defendant

offered to commit prostitution, and this proof was all that was requisite to a conviction. * * * "

The majority opinion further states that " assuming that one may ' loiter ' * * * in one's own home, the record is devoid of any proof of such an act." As we have construed the section here under consideration, we think it plain beyond dispute that defendant's guilt thereunder was satisfactorily shown. The three telephone conversations — which were intercepted by the police under authority of a court order — must be read together and when so read they leave no doubt as to defendant's use of her apartment as a base for the purpose of procuring others to commit unlawful sexual intercourse. That was not the only evidence of guilt. The Magistrate in a carefully considered decision expressly found corroboration of the testimony of the police in the testimony of two of the three codefendants tried with Mrs. Choremi. Those two codefendants were the only two of the four who testified and one of them was Miss Blavier. In addition when the arrest of Mrs. Choremi was made at her home on the same day on which the last conversation took place — May 21st — she was told by the police officer: " We have intercepted telephone messages between you and Blavier in which you made dates to go out with men. Is that right?" Mrs. Choremi replied: " Yes, I made dates with Blavier." On May 5, 1948, defendant asked her accomplice codefendant, another woman, " Did you make that date for me?" and received the reply, " Yes, you'll be at my apartment tonight at 6:30. They are very nice and it's for twice what you expect, you know." Defendant agreed to be there at the hour suggested. On May 20, 1948, the date specified in the information, she made another appointment of a like nature, the codefendant this time making the comment that the person defendant was to meet " had not been laid in a month, and so you can get paid and can enjoy yourself at the same time." The next day, defendant expressed disinterest in meeting another person on the ground that the money was insufficient. The codefendant said, " You know you can't meet fellows like we had yesterday every day. They were exceptional and you can't always get that money ", to which defendant replied, " You can call me here if it's for more." We must confess that we are unable to understand how these conversations may be read without leading to the inference that defendant, in her apartment, on

May 20, 1948, " loitered " — as we have construed that term — for the purpose of procuring another to commit unlawful sexual intercourse.

We do not think the case of *People* v. *Reynolds* (300 N. Y. 616) is in point. The defendant there was charged with a violation of clause (b) of subdivision 4 of section 887 of the Code of Criminal Procedure which involves prostitution. Miss Blavier, one of the three codefendants, was charged with that here as well as with a violation of clause (c) of subdivision 4 of section 887. Mrs. Choremi, however, was charged only with the latter and, as we have already pointed out, there is no requirement under clause (c) of subdivision 4 of proof of an act of prostitution or of unlawful sexual intercourse to support a conviction thereunder. It no doubt is the fact that Mrs. Choremi could also have been charged with a violation of both subdivisions but she was not and thus *People* v. *Reynolds* (*supra*) has no application here.

There is another, and conclusive, reason why this conviction should be affirmed. We have referred above solely to clause (c) of subdivision 4 of section 887 of the code. Clause (a) of subdivision 4 provides that a person is a vagrant " who *offers to commit prostitution* ". (Italics supplied.) Whether or not defendant here loitered for the purpose of procuring another to commit unlawful sexual intercourse, it cannot be disputed, after considering her telephone conversations, that she at least offered to commit prostitution. Defendant was charged with a violation of clause (c) of subdivision 4 of section 887, but as we recently held in *People* v. *Feiner* (300 N. Y. 391, 397–398), " it is settled that the judgment of conviction in a case such as this will be affirmed if the evidence establishes a violation of any of the subdivisions of the section. (*People* v. *Hipple*, 263 N. Y. 242, 244.) " The *Feiner* and the *Hipple* cases (*supra*) were concerned with the offense of disorderly conduct, but we see no substantial distinction in this respect between that offense and the offense of vagrancy.

The judgment of conviction should be affirmed.

LOUGHRAN, Ch. J., LEWIS and DESMOND, JJ., concur with FULD, J.; CONWAY, J., dissents in opinion in which DYE and FROESSEL, JJ., concur.

Judgments reversed, etc.