THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH SKOLNICK, Appellant.

County Court, Sullivan County, April 19, 1951.

*Goldstein & Goldstein* for appellant.

*Ben Newberg, District Attorney,* for respondent.

DECKELMAN, J. On January 4, 1951, SAMUEL SPRAYREGEN, a Justice of the Peace of the Town of Thompson, Sullivan County, New York, after a hearing or a trial, found Joseph Skolnick, guilty of a traffic infraction alleged to have been committed on or about the 2d day of November, 1950, in the town of Thompson, Sullivan County, N. Y., and imposed a fine of $10. Skolnick was charged with the violation of paragraph [subdivision] 24 of section 81 of article VI of the Vehicle and Traffic Law of the State of New York, and appealed to this court on various grounds:

1. That the information was wholly defective and insufficient upon its face to charge a violation of paragraph [subdivision] 24 of section 81 of article VI of the Vehicle and Traffic Law.

2. That SAMUEL SPRAYREGEN, the Justice of the Peace, was disqualified as a matter of law, to hear, try and determine this proceeding.

3. That improper testimony was taken over the objection of counsel.

4. That the evidence on the trial was insufficient to prove the violation charged.

Subdivision 29 of section 2 of the Vehicle and Traffic Law defines a traffic infraction as follows: " 29. Traffic infraction. A ' traffic infraction ' is the violation of any provision of this chapter, or of any local law or ordinance governing or regulating traffic, where a penalty or other punishment is prescribed and which is not expressly declared by this chapter to be a misdemeanor or a felony. A traffic infraction is not a crime, and the penalty or punishment imposed therefor shall not be deemed for any purpose a penal or criminal penalty or punishment, and shall not affect or impair the credibility as a witness, or otherwise, of any person convicted thereof. The definition herein prescribed shall be retroactive and shall apply to all acts and violations heretofore committed, where such acts and violations would, if committed subsequent to the taking effect of this subdivision, be included within the meaning of the term ' traffic infraction ' as herein defined. Courts and judicial officers heretofore exercising jurisdiction over such acts and violations as misdemeanors or otherwise shall continue to exercise jurisdiction over traffic infractions as herein defined, and for such purpose such acts and violations shall be deemed misdemeanors and all provisions of law relating to misdemeanors, except as herein otherwise expressly provided, shall apply to traffic infractions, except however, that no jury trial shall be allowed for traffic infractions."

The Court of Appeals had repeatedly held that an information or complaint (if you wish to describe it as such), charging noncriminal or petty offenses below misdemeanor grade, such as minor offenses, traffic infractions, etc., need not state the particular offense with the same exactness or precision of pleading, as is required in an information charging a misdemeanor.

Judge CARDOZO, in *Tenement House Dept.* v. *McDevitt* (215 N. Y. 160, 168–169) said: " But in the prosecution of minor offenses, there is a wider range of practice and of power. Prosecutions for petty penalties have always constituted in our law a class by themselves. * * * That is true though the prosecution is criminal in form. It is still more plainly true

where as here a trifling penalty is imposed  \*  \*  \*.  In such cases, it is enough that according to common experience there is a more or less constant relation between the act or omission against which the penalty is aimed, and the guilt, whether due to design or to neglect, of the person by whom the penalty is payable.  The legislature stops the inquiry when that relation has been ascertained, rules out the excuses of the individual, and requires him at his peril to conform to the average standard of conduct and of knowledge.  \*  \*  \*  The law is not oblivious of considerations of degree.  ' The nature and extent of the penalty attached to the offense  \*  \*  \*  may reasonably be considered.  There is nothing that need shock any mind in the payment of a small pecuniary penalty by a person who had unwittingly done something detrimental to the public interest.' '' (See, also, *People* v. *Grogan,* 260 N. Y. 138; *People* v. *Hipple,* 263 N. Y. 242; *People* v. *Feiner,* 300 N. Y. 391; the dissenting opinion of Judge CONWAY in *People* v. *Choremi,* 301 N. Y. 417, 424, and the opinion of the Appellate Division, Fourth Department, in *Matter of Cooley* v. *Wilder,* 234 App. Div. 256, 259.)

The appellant asks this court to test the complaint or information here by the standards applicable to information charging crimes.  This I decline to do for the reasons above stated.

The information in this matter reads as follows:

STATE OF NEW YORK  
County of Sullivan  } ss.  
Town of Thompson

Albert J. Dauch, being duly sworn, deposes, informs and says that at the Old Haley Farm of, Town of Thompson, in the County of Sullivan and State of New York, on or about the 2nd day of November, 1950, at about 3:50 o'clock in the afternoon, one Joseph Skolnik did in my view and to my knowledge commit a traffic infraction in violation of Article 6, Section 81, Paragraph 24 of the Vehicle and Traffic Law of the State of New York, in that the said Joseph Skolnik did while driving and operating a motor vehicle to wit a 1933 Continental Sedan bearing registration No. CS 912 N. Y. on Route 17B Public Highways in said Town and County did fail to come to a complete stop and remain standing upon overtaking a school bus stopped for the purpose of discharging passengers.  Said omnibus carrying signs on both front and rear designating same as a School Bus also equipped with red flasher light on front and rear in proper working order all contrary to the provision of the statute in such case made and provided.

Wherefore, he Prays that a Warrant may issue against the said Joseph Skolnik.

Sworn to before me November 30th, 1950.

ALBERT J. DAUCH

SAMUEL SPRAYREGEN  
Justice of the Peace.

In my opinion the information was sufficient to apprise the appellant of the charge against him, applying to this case what Judge CARDOZO called, '' the average standard of conduct and of knowledge.'' It apprised him of the time and place of the alleged violation. I hold that the information was sufficient to properly charge the petty offense here.

As to whether or not the Justice of the Peace was disqualified, as a matter of law, to hear, try, and determine this proceeding, there is nothing in the affidavit as to the conduct of this Justice of the Peace that would warrant this court to hold, as a matter of law, that he was disqualified by reason of bias or otherwise to hear and determine the issue here.

It is true that it is alleged in the affidavit filed on this appeal that after finding the appellant guilty, and imposing a fine he stated to some newspaper reporter that he deplored his inability, under the law, to impose a greater fine. But, if that were a ground for disqualification perhaps Judges of some of our higher courts might be disqualified by reason of their disagreement with the provisions of the statutes.

In the absence of grounds for his disqualification, prior to the hearing and determination, he was not required by law to consent that this matter be tried before any other Justice of the Peace of the Town of Thompson, and he had an absolute right, under the law, to try, and determine, the issue here without regard to the desire of the People or the appellant.

As to the third ground for the appeal here that is that incompetent evidence was received over the objection of the attorney for the appellant. I have carefully examined the testimony and evidence submitted and find only three objections in the whole record. In my opinion none of these objections were well taken.

As to the last ground urged on this appeal, that is, insufficient proof to sustain the determination of the Justice, subdivision 24 of section 81 of the Vehicle and Traffic Law, provides as follows: '' 24. The driver of a vehicle overtaking or meeting an omnibus which has stopped for the purpose of receiving or discharging passengers, shall bring his vehicle to a complete stop, and keep it stationary until such omnibus shall resume motion, or until signalled by the driver to proceed, provided flashing red signal lights and signs designating the omnibus as a school omnibus are displayed on such omnibus as required by or pursuant to the provisions of subdivision twenty of section fifteen of this chapter.''

There are two subdivisions 20 of section 15 of the present Vehicle and Traffic Law. The first of such subdivisions which went into effect on July 1, 1950 (L. 1950, ch. 566) is as follows:

" 20. (See also subd. 20 below) Every omnibus having a seating capacity of more than seven passengers, used exclusively to transport pupils or pupils and teachers to and from school, shall be equipped in the manner provided by this subdivision:

" (a) There shall be at least one flashing red signal lamp on the front thereof and at least one flashing red signal lamp on the rear thereof, each to be securely affixed no more than six inches below the top of the vehicle. Each such signal lamp shall have a lens not less than six inches in diameter with the word " stop " across the face of such lens and be so installed as to be under the control of the driver of the vehicle. The driver of every such vehicle shall keep such signal lamps lighted whenever passengers are being received or discharged.

" (b) In addition to such signal lamps, two signs shall be conspicuously displayed on the exterior of every such omnibus designating it as a school omnibus by the use of the words ' SCHOOL BUS ' which shall be painted or otherwise inscribed thereon in black letters. Such letters shall be of uniform size, at least eight inches in height, and each stroke of each letter shall be not less than one inch in width. The background of each such sign shall be painted the color known as ' national school bus chrome.' Such signs shall be securely mounted on top of such vehicle, one of which shall be affixed on the front and one on the rear thereof. Each such sign shall be visible and readable from a point at least two hundred feet distant.

" (c) In the event such vehicle is operated on a public highway during the period between one-half hour after sunset and one-half hour before sunrise, the signs required by paragraph (b) of this subdivision shall be so illuminated as to be visible from a point at least five hundred feet distant.

" The commissioner of motor vehicles is hereby authorized and empowered to adopt and, from time to time, to amend such regulations, not inconsistent with this subdivision, governing the size, type, construction and use of such signal lamps and signs, as he may deem necessary for public safety. On and after July first, nineteen hundred fifty-one, no such signal lamp or sign, shall be deemed to comply with the requirements of this subdivision unless it is of a size and type approved by the commissioner and unless it shall conform to the specifications prescribed and promulgated by him."

It is to be noted that at the beginning of this section, in parenthesis is as follows: " See also subdivision 20 below."

The second subdivision 20 in section 15 (as amd. by L. 1950, ch. 581) is as follows:

"(See also subd. 20 above) Every omnibus having a seating capacity of more than seven passengers, used exclusively to transport pupils or pupils and teachers to and from school, shall be equipped with at least one flashing red signal lamp on the front and on the rear thereof placed no more than six inches below the top of the vehicle. Each such signal lamp shall have a lens not less than six inches in diameter and be so installed as to be under the control of the driver of the vehicle. The driver of every such vehicle shall keep such signal lamps lighted whenever passengers are being received and discharged.

" Such signal lamps shall, after July first, nineteen hundred fifty-one, be of a size and type approved by the commissioner and shall conform to specifications established by him.

" In addition to such signal lamps, two signs shall be displayed on every such omnibus designating it as a school omnibus in letters, at least, four inches in height, one of such signs shall be on the front and one on the rear."

It is to be noted at the beginning of this second subdivision is the following: " See also subd. 20 above."

Nowhere does it appear that the provisions of the second subdivision set forth have been repealed and, in my opinion, any person charged with a violation of subdivision 24 of section 81, under the Vehicle and Traffic Law is bound to comply with the provisions of that section, when an omnibus is equipped with either of these items listed in subdivision 20, first set forth or which is specified in subdivision 20 secondly set forth. And, until such time as the Legislature repeals the second subdivision 20, it is my opinion, that any person approaching a motor vehicle on the public highway in this State is bound to observe the provisions of subdivision 24 of section 81, when he overtakes an omnibus on which signs are displayed in letters at least four inches in height, being equipped with flasher lights therein described.

The proof shows that at about 3:30 to 4:00 P.M. on November 2, 1950, on Route 17, between Monticello High School and Black Lake, near the Cliff Crandall house and the Donaldson place, an omnibus driven by Albert Dauch and carrying nineteen school children and proceeding westerly stopped to discharge two of the children near the Donaldson place; that the motor vehicle was equipped with flasher lights, front and rear,

operated by opening the door and also equipped with signs, front and rear, by letters four inches in height designating it as a school bus and stop lights in back which lighted up when brakes were applied; that defendant, Skolnick operating his motor vehicle on said highway proceeding in the same direction and overtaking such omnibus failed to bring his motor vehicle to a complete stop and to keep it stationary until the omnibus resumed motion.

Defendant argues that there is no proof that the occurrence took place in Sullivan County. In my opinion the Justice of the Peace had a right to resort to common knowledge and take judicial notice that the place where the occurrence took place was in Sullivan County.

Some of the issues raised by defendant in his argument are matters of defense. No proof was offered by defendant.

In my opinion the proof adduced before the Justice of the Peace was sufficient to warrant his determination.

The order of the Justice of the Peace and the fine of $10 are hereby affirmed.

Submit order.