Herman Weinkrantz, M.
The defendant is charged with being a vagrant, in violation of the provisions of section 887 (subd. 4, cl. [c]) of the Code of Criminal Procedure of the State of New York.
The testimony establishes that the defendant, in his office, known as the Lane Employment Agency, located at 115 West *343 42nd Street, in the Borough of Manhattan, City of New York, did personally interview three females, to wit: Lilly Fernandez, age 17, on June 17,1960; Karyn Kauff, age 17, on July 11,1960; and Policewoman Marie Cirile, on July 14, 1960, and that he offered each of these females employment with unnamed employers, but that the witnesses Fernandez and Kauff would have to go to bed with the respective bosses, and that the witness Cirile would have to go to bed with the defendant. Together with the rest of the uncontradicted testimony, it is clear that the defendant, by promise of high salaries and other emoluments in their new jobs, induced or enticed and was procuring these girls for the purpose of committing the acts proscribed by section 887 (subd. 4, cl. [c]) of the Code of Criminal Procedure of the State of New York. (Any act of intercourse by the witnesses Fernandez and Kauff would per se be unlawful by virtue of their age.)
In order to come within the purview of section 887 (subd. 4, cl. [e]) of the Code of Criminal Procedure, the defendant must, (1) loiter, (2) in or near any thoroughfare or public or private place, and (3) for the purpose of inducing, enticing or procuring another to commit lewdness, fornication, unlawful sexual intercourse, or any other indecent act.
To properly define loitering, in its legal sense, the court is bound by reasonable usage, the application of the word to specific facts in the adjudicated cases, the language of the statute, and all the facts and circumstances of each specific case.
Webster’s New International Dictionary (2d ed.) defines “ linger ” as synonymous with “ loiter ”, and defines “ linger ” as “to remain or wait long; to be slow in parting or quitting anything ’ ’.
Murray’s, A New English Dictionary on Historical Principles, (Vol. VI) “ Founded mainly on the materials collected by the Philological Society,” Oxford, England —1908, defines loitering as ‘ ‘ that loiters or idles; in early use, that leads a vagabond life. ’ ’
Webster’s New Collegiate Dictionary, 2d ed., 1959, gives as synonymous with “loiter”, the word “linger”, and with ‘ ‘ linger ’ ’, the word ‘ ‘ stay ’ ’, and, as synonyms for the word “stay”, the words: to remain, to wait, to abide, to tarry, to linger. Certainly, the record establishes that, at least on three separate occasions within one month, to wit: June 17,1960, July 11, 1960, and July 14, 1960, the defendant remained, waited, abided, tarried and lingered at his employment office with the three People’s witnesses, Fernandez, Kauff and Cirile, respectively.
*344 As was held in People v. Strauss (114 N. Y. S. 2d 322, 324) 1 ‘ Whether a person is chargeable with loitering depends on all the facts and circumstances of the case. True, time is an element, but it must be measured with respect to place, purpose and all other factors.” It may be well to point out here that, in the instant ease, the only testimony in the record of the use made by the defendant of his employment office, is the use thereof for the “inducing, enticing or procuring” within the meaning of section 887 (subd. 4, cl. [c]) of the Code of Criminal Procedure.
In People v. Choremi (301 N. Y. 417, 420) the Court of Appeals said: 11 Even assuming that one may ‘ loiter ’ — as that word is used in the criminal statutes under consideration * * *■— in one’s own home, the record is devoid of any proof of such act.” In other words, the majority opinion is based upon a deficiency of proof and is not a holding that, as matter of law, one may not loiter in one’s own home. Cannot one then loiter in one’s office? The defendant’s office was an employment agency and, consequently, was necessarily open to and available to the general public seeking employment. In the instant case, the inducing, enticing or procuring did not take place in a private residence to which no one but the lawful occupant could have the right of access, nor by telephone, but in an office to which the general public was invited and authorized by law to come, and the inducing, enticing or procuring was done by the defendant in person, face to face with the witnesses herein.
In People v. Gould, (306 N. Y. 352) the Court of Appeals held that the prosecution failed to establish that the defendant had either prostitutes or customers available. He was merely attempting to place under his management a woman for whom, in the business of prostitution, he would, in futuro, act as a pimp or procurer. That case differs from the instant case in that (1), it was a prosecution under clause (b), not clause (c) of subdivision 4 of section 887 of the Code of Criminal Procedure, and (2), it was a holding that the evidence was insufficient for a conviction as a pimp or procurer, as a matter of fact.
On the three separate occasions in this record, the only employment which the defendant offered these girls were jobs for which they would have to submit to unlawful sexual intercourse, or other lewd acts, etc. with their employers. There is no testimony anywhere in the record of this defendant ever having offered or having obtained legitimate employment for anyone. Therefore, the court must conclude that the defendant’s employment agency facade was merely a cloak for his business of inducing, enticing or procuring girls for unlawful sexual intercourse or other indecent acts.
*345 In People v. Hale, which seems to be the latest word on this subject by the Court of Appeals, decided July 8, 1960, and reported at (8 N Y 2d 162), the defendant was convicted of vagrancy under section 887 (subd. 4, cl. [c]) of the Code of Criminal Procedure of the State of New York for making indecent, lewd and homosexual proposals to a police officer in a bus station in Buffalo, N. Y. At page 73, in People v. Hale, the court said, “ Clause (c), however, expressly covers this case. The language is clear and unambiguous. One who loiters in or near a thoroughfare or public or private place, for the purpose of inducing another to commit (1) lewdness, (2) fornication, (3) unlawful sexual intercourse, (4) or any other indecent act, is classified as a vagrant. Certainly this defendant, loitering in a public place, sought to entice another to commit lewdness and indecent acts. It is true that we have described subdivision 4 of section 887 as a general prostitution statute which £ condemns various aspects and incidents of pandering and prostitution ’ (People v. Gould, supra, p. 354; People v. Moss, 309 N. Y. 429), but we have never held that clause (c) of subdivision 4 does not condemn other conduct encompassed within its express language. While clause (c) does apply to loitering pimps and prostitutes, it applies equally to loitering homosexuals.”
I see no legal distinction between the public character of the bus depot in Buffalo where anyone may go to board a bus and the defendant’s employment agency in New York City, where anyone may go to look for a job. Besides which, the statute expressly includes any private place within its provisions.
In People v. Choremi (301 N. Y. 417, 421, supra) Judge Conway, in his dissenting opinion, states: ‘ ‘ This section is part of a comprehensive series of enactments passed by the Legislature in an effort to stamp out the crime of prostitution, with all its attendant evils, by controlling every facet of the illegal enterprise * * *. The law’s primary concern is not with punishing the females involved, as is evidenced by the comparatively light punishment provided in section 887 of the code compared to the more severe penalties to which others who make money out of the prostitution of women are subject.”
Certainly the Legislature did not intend to omit from the applicability of section 887 (subd. 4, cl. [c]) of the Code of Criminal Procedure any one who, behind the mask of a legal-looking business, lures innocent young girls into a respectable-appearing office and there induces, entices or procures them for unlawful sexual intercourse or any other indecent act. In fact, I am certain that the Legislature intended to declare illegal all *346 such activities, whether carried on surreptitiously, or openly and notoriously.
Accordingly, the defendant’s motions made at the close of the case are denied, and the defendant is found guilty as charged.