**Eleanor R. HARRIS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 1931.**

Municipal Court of Appeals for the District of Columbia.

Argued March 11, 1957.

Decided May 27, 1957.

De Long Harris, Washington, D. C., for appellant.

Richard W. Barton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp.

2.  Jordan v. United States, 98 U.S.App.D.C. 160, 233 F.2d 362; Meyers v. United States, 5 Cir., 116 F.2d 601. See Annotation, 125 A.L.R. 605.

Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

This appeal is from a conviction of vagrancy, Code 1951, Supp. V, § 22–3302(1). This section of the statute defines a vagrant as:

> "Any person known to be a pickpocket, thief, burglar, confidence operator, or felon, either by his own confession or by his having been convicted in the District of Columbia or elsewhere of any one of such offenses or of any felony, and having no lawful employment and having no lawful means of support realized from a lawful occupation or source, and not giving a good account of himself when found loitering around in any park, highway, public building, or other public place, store, shop, or reservation, or at any public gathering or assembly."

The government's evidence disclosed that between June 6 and October 2, 1956, police officers observed the appellant on several occasions during the late evening or early morning hours in the same general area of the city, which was thirty to forty blocks distant from her home. On the first occasion, appellant was seen standing at an intersection and was asked by the police officer, " 'Eleanor, what are you doing here?' " She replied that she wasn't doing anything and had just been released from jail, having been committed for petit larceny. She further explained that she was going to a drug store. Appellant was taken to the "station," held in connection with a complaint of robbery, and released.

Some weeks later, another officer observed appellant standing on a corner around midnight. The only explanation offered for her presence was that she had been to the drug store. As evidence of this she was carrying a package. In answer to further interrogation, appellant stated that she was not employed. Later that same night in the same general vicinity, a third officer saw appellant approach a man. Upon being asked what she was doing in that part of the city, she stated she was just walking around. When she was asked if she had been up to anything, she replied, " 'No indeed. * * * Now, you know I didn't do anything, I don't do anything over here in number three [precinct].' " She was again taken to the "station" and released after interrogation based on complaints from that area.

On October 2 around 1 a.m., appellant was seen talking to a man on a street corner and walked away as the officer approached. She explained her presence by saying she had had "a couple of drinks" and was on her way to get a hamburger. The officer testified that she was then charged with disorderly conduct, which was later changed to a charge of vagrancy after he had "looked over the file and found we had enough observations on her."

During the trial appellant's counsel stipulated that in November 1955 appellant had entered a plea of guilty to a charge of taking property without right.

Appellant contends the trial court erred in denying her motions for judgment of acquittal in that the government failed to prove the elements necessary to support a conviction under the statute.

In considering appellant's motions for judgment of acquittal, we must construe the government's evidence in the most favorable light, together with all favorable inferences which the court may have drawn.[1]

It is first contended that a conviction under Code 1951, § 22–1211, does not

1. Barnard v. District of Columbia, D.C. Mun.App., 125 A.2d 514; Mitchell v. District of Columbia, D.C.Mun.App., 113 A. 2d 566.

render one necessarily a "known thief." This statute makes it a misdemeanor to take and carry away the property of another *without the right to do so*. The statute is couched in the same general language as our larceny statute.[2] Unlike larceny, proof of a specific criminal intent to deprive an owner of his property permanently is absent in this offense. However, this does not eliminate the element of general criminal intent which may be presumed from doing the prohibited act.[3] The presumption of a general criminal intent in the initial taking is sufficient, we think, to bring one within the scope of the term "thief" as used in the vagrancy statute. "Thief" in that statute is used generically and may be defined as one who takes the property of another without the knowledge or consent of the latter.

The vagrancy statute provides that one may be a "known thief" by his own confession or by a conviction in the District or elsewhere. Appellant told the officer in this case "she had been in jail for petit larceny" and at trial both parties stipulated that she had entered a plea of guilty to the offense of taking property without right. We do not think the trial court erred in denying the motions for acquittal on this ground.

▮ It is next contended that the proof was insufficient to show that appellant was loitering or that she did not give a good account of herself. It was not the purpose of this statute to deprive persons of the use of public sidewalks, so long as they are used either for legitimate purposes of pleasure or business. But, when a course of conduct indicates a reasonable belief that the use of the streets is not for legitimate purposes, an officer may ask one to account for his actions.[4]

The evidence disclosed that appellant was observed over a period of four months late at night in the same general area of the city, which was thirty or more blocks from her home. On each occasion she was seen talking to a stranger or standing alone on the sidewalk. The continuous course of conduct of this type is evidence of loitering which has been defined by this court as to spend time idly, to be dilatory, or to saunter.[5] The only explanation offered for her presence was that she was just walking in one instance, was going to get a hamburger in another, and in the other two instances she was going or coming from a drug store. The explanation offered must be something more than a *mere account;* the statute requires a "good account," that is, one which is reasonably credible.

Appellant's counsel stresses the Beail case[6] in his argument. In that case the manner of questioning was attacked and the court said, "[t]he statutory words 'not giving a good account of herself' mean something more than not giving a good account in response to casual or bantering questions." That case is distinguishable from the present case in that here the officers did not direct their questions in either a casual or bantering manner. On each occasion

---

2. In Epps v. United States, 81 U.S.App. D.C. 244, 157 F.2d 11, the court, in a prosecution for a violation of Code 1951, § 22-2204 — taking a motor vehicle *without the consent of the owner* — held that the familiar rule in larceny cases, concerning the unexplained possession of recently stolen property, was applicable, thus paralleling the crime of taking an automobile *without the consent of the owner* with the crime of larceny. By the same token the crime of *taking property without right* is clearly analogous to larceny.

3. See Proctor v. United States, 85 U.S. App.D.C. 341, 177 F.2d 656, for a parallel ruling on the same offense involved in the Epps case.

4. Beail v. District of Columbia, D.C.Mun. App., 82 A.2d 765, reversed on other grounds 91 U.S.App.D.C. 110, 201 F.2d 176.

5. Williams v. District of Columbia, D.C. Mun.App., 65 A.2d 924; Burns v. District of Columbia, D.C.Mun.App., 34 A.2d 714.

6. 91 U.S.App.D.C. 110, 201 F.2d 176, 177.

appellant was directly asked to account for her presence and conduct, as well as to explain her conversations with strangers. On at least two occasions she was taken to the "station" for further interrogation concerning complaints and a robbery in that area.

We think the government offered sufficient evidence to sustain the conviction and having proved the required elements, the burden of proving she had lawful means of support shifted to the appellant.[7] Appellant's evidence consisted of a witness who testified he supported her. He stated, "No, I am not her husband. We live together common law." We feel that on this phase of the case the court was justified in concluding that appellant had "no lawful means of support realized from a lawful occupation or source".

Affirmed.

---

7. Williams v. District of Columbia, supra note 5; Clark v. District of Columbia, D.C.Mun.App., 34 A.2d 711; Rogers v.

District of Columbia, D.C.Mun.App., 31 A.2d 649.