CITY OF AKRON, APPELLEE, *v.* EFFLAND, APPELLANT.

(No. 4996—Decided July 13, 1960.)

16

*Mr. Harry N. Van Berg*, director of law, and *Mr. Fabian S. Yelin*, for appellee.

*Mr. Joseph G. Miller*, for appellant.

HUNSICKER, J.  This is an appeal on questions of law from a judgment of guilty of the offense of loitering.  The affidavit, which is the basis of the conviction, in its pertinent part says that Henry Effland "unlawfully did loiter in said city of Akron, in violation of Section 40, Chapter No. 25, of the Code of the city of Akron * * *."

The ordinance which was allegedly violated reads in part as follows:

"It shall be unlawful for any person to loiter at or in any hotel, railway depot, place of worship, place of business, place of amusement or other public place or building, or any street or alley, or upon the stairway or within the entrance or vestibule of any of the above-named places.  Any person violating this section shall be fined not more than fifty dollars."

The evidence indicates that Effland was seen, at 9:45 at night on September 10, 1959, sitting on the rear fender of an automobile parked in front of a bar at 23 South Main Street in the city of Akron.  His clothing consisted of "sweat pants and sweat shirt."

The police officer who arrested him drove, in a police cruiser, past the place where Effland was sitting.  He then stopped and watched Effland for a few minutes, then turned the police automobile around and drove to the place where Effland was seated. Effland was talking to two other persons when accosted by the officer.  The officer testified that he asked them what they were loafing on the beat for, and told Effland to be on his way.  The officer then testified that Effland "started giving me a hard time about it."  The officer then said, "So I asked him again, still talking, and he isn't moving, so I took him by the arm and said 'Come on with me.'  And about that time he drew back and got ready to hit me, and I took him by the arm and took him to the police cruiser."

The defendant (appellant in this court), Effland, told the officer he had been lifting weights at his grandfather's house, and that one of the boys with him was waiting for a girl friend.

The time that Effland was at the place where he was arrested was in dispute. Effland said the officer accosted him about four minutes after he arrived in front of 23 South Main Street. The officer said he watched Effland about five minutes before telling him to move on, although he also said it could have been less, or that even more time may have elapsed.

Effland complains, in this appeal from his conviction under the ordinance, that such ordinance is unconstitutional, because it is vague and an arbitrary and unreasonable interference with the liberty of the person. He also says that, even if we assume that the ordinance is a valid enactment, the judgment of guilty is against the manifest weight of the evidence.

We should first note here that the offense charged is an act and not a status. Effland is not charged with being a suspicious person or a vagrant. He is charged with "loitering" on a street in the city of Akron. The facts do not justify such conviction, and the judgment merits reversal and final judgment in favor of Effland. If persons are to be arrested, convicted, and then fined, for standing on a street for five or six minutes, waiting for someone, then most of the people of this city are in constant jeopardy. Our case is one of "loitering"—not that of a suspicious person—which may have been a valid charge, based on the unusual clothing worn by Effland.

We are more interested in this matter in the claim that the ordinance as written is unconstitutional.

It must be again pointed out that the ordinance is directed only against loitering, without providing in that ordinance for one who is justified in some manner for standing idly around or lagging behind or being dilatory. The word "loiter," according to Webster's New International Dictionary (2 Ed.), means "1. To be slow in moving; delay; linger; saunter; lag behind." Synonyms are given as "lag, tarry." According to Black's Law Dictionary (3 Ed.), "loiter" means "to stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind."

To be slow in moving should not be construed as a misdemeanor, unless it operates as an obstruction to the general public or is such conduct which, without satisfactory explanation, contributes to the detriment of the general public.

The ordinance here in question prohibits all loitering on the streets of Akron, whether or not there is a justifiable reason for so doing. There is no saving clause in the ordinance, and hence one who is window shopping, or a man waiting for his wife outside of a business place, is guilty of the offense. One who stands idly waiting for a public conveyance is guilty under this ordinance, for no possible excuse or saving provision is written into the ordinance.

There have been some cases brought to the courts where ordinances involving loitering, vagrancy, and suspicious persons have been considered. Without attempting to discuss them in detail, it is found that all of them contain a phrase similar to the following: "without lawful means of support," or "without being able to give any satisfactory account of himself." *In re Baldridge*, 6 Ohio App., 76; *City of Toledo* v. *Wagner*, 57 Ohio App., 160, 13 N. E. (2d), 136; *City of Columbus* v. *Aldrich*, 69 Ohio App., 396, 42 N. E. (2d), 915; *City of Columbus* v. *McCrory*, 38 Ohio Law Abs., 142, 49 N. E. (2d), 583; *Welch* v. *City of Cleveland*, 97 Ohio St., 311, 120 N. E., 206.

The distinction between loitering, an act, and being a suspicious person, a status, is shown by the fifth paragraph of the syllabus in *City of Youngstown* v. *Aiello*, 156 Ohio St., 32, 100 N. E. (2d), 62, which says:

"5. The offense of 'being a suspicious person' does not consist of particular acts, but of the mode of life, the habits and practices of the accused in respect to the character or traits which it is the object of the ordinance creating the offense to suppress. (*Morgan, Supt.*, v. *Nolte*, 37 Ohio St., 23, approved and followed.)"

We realize that when the idle, vicious, or mischievous are allowed to congregate on the streets or in public places, there is danger to the public, and hence it is essential to the public peace that such groups be broken up. There is equally a reason to protect the public from arbitrary conduct on the part of its police officers, for this ordinance would place in the hands of abusive officers all persons standing idly on the streets of Akron, whether or not they had a just reason for so doing.

The power to enact this city ordinance is derived from the charter of the city of Akron, and Section 3 of Article XVIII

of the Constitution of Ohio, subject to the limitation contained in that Constitution.

"2. The 'powers of local self-government' conferred upon municipalities by Section 3 of Article XVIII of the Constitution include the power to enact local legislation, except to the extent that limitations upon that legislative power have been set forth in the Constitution." *Benjamin* v. *City of Columbus*, 167 Ohio St., 103, 146 N. E. (2d), 854.

Courts are reluctant to declare legislative acts unconstitutional, but where, as herein, the legislation makes no provision for justifiable tarrying on the streets, such legislation, as applied to the act of waiting on a public street of the city of Akron, is arbitrary and unreasonable. The ordinance as enacted, without a saving or justification clause, is clearly unconstitutional.

What we have said herein does not justify the conduct of Effland in appearing on the principal street of Akron dressed in scanty clothing, and the writer of this opinion would have no hesitancy in affirming a conviction based upon other provisions of the city or state laws.

Under the circumstances of this case, and the charge of loitering, the judgment against the appellant must be reversed.

*Judgment reversed and defendant discharged.*

DOYLE, P. J., and STEVENS, J., concur.