[No. 38704. En Banc. February 2, 1967.]

THE CITY OF SEATTLE, *Appellant*, v. JAMES DREW, *Respondent.**

*Reported in 423 P.2d 522.

*A. L. Newbould* and *Denny E. Anderson,* for appellant.

*Charles E. Ehlert, Michael H. Rosen,* and *Philip L. Burton,* for respondent.

WEAVER, J.—The alpha and omega of this case is the constitutionality of a Seattle ordinance which makes it a crime for any person loitering abroad, or abroad under suspicious circumstances, to fail to give a satisfactory account of himself upon the demand of any police officer.

The ordinance (Seattle Code § 12.11.290) provides that:

> It shall be unlawful for any person wandering or loitering abroad, or abroad under other suspicious circumstances, from one-half hour after sunset to one-half hour before sunrise, to fail to give a satisfactory account of himself upon the demand of any police officer.

The alleged malfeasance consists of two elements which must exist before the accused is subject to sanctions:

(1) He must be "wandering or loitering abroad" or be "abroad under other suspicious circumstances" at night, as declared unlawful in the ordinance; *and*

(2)   He must "fail to give a satisfactory account of himself upon the demand of any police officer."

Defendant was charged under the ordinance[1] in the Seattle Municipal Court. He appealed his conviction[2] to the King County Superior Court. The trial judge, without hearing evidence,[3] held the ordinance unconstitutional. The judgment of dismissal states:

> The Court . . . is of the opinion that the phrases "under suspicious circumstances" and "satisfactory account" are without sufficiently accepted meaning so as to constitute a standard against which conduct of a person accused can be compared or weighed, in making a judicial determination. That, therefore, Seattle Ordinance . . . known as Seattle City Code 12.11.290, violates Article I, Sections 3, 7, and 9 of the Washington State Constitution and the Fourteenth Amendment to the United States Constitution.

The City of Seattle appeals.

■   We begin our analysis of the questions presented mindful of the fact that when the constitutionality of an ordinance is questioned, it will be presumed constitutional.

---

[1] It appears, however, that the charge was upon only the second facet of the ordinance. The criminal complaint in the Municipal Court of Seattle states that defendant did

> wilfully and unlawfully fail to give a *good* (the ordinance requires a "satisfactory") account of himself when stopped and questioned by the arresting officers in the 3600 block East Pike Street at 11:20 p.m. (Italics ours.)

[2] Defendant was neither fined nor assessed costs; he was sentenced to 10 days in the city jail, suspended.

[3] The municipal court of Seattle is not a court of record. Defendant's counsel did, however, file a motion in the superior court to suppress evidence and to dismiss the complaint. In an uncontroverted affidavit in support of the motion, defendant's counsel alleged that the police officer testified that, upon his inquiry, defendant gave his name, his residence, where he was going, and how he happened to be where he was. Defendant stated he had ridden the bus from West Seattle, had fallen asleep and passed his bus stop; that he was not familiar with the neighborhood and had lost his way; that the explanation was not satisfactory to the police officer and that he arrested him; that defendant was taken to the Seattle city jail and booked on "Open—Suspicion of Armed Robbery." There is nothing to indicate that defendant was armed.

If it is reasonably capable of a constitutional construction, it must be given that construction. *Martin v. Aleinikoff,* 63 Wn.2d 842, 389 P.2d 422 (1964); *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964).

We look first at the "void for vagueness" problem, which is the subject of defendant's first argument in support of the judgment. In his appellate brief defendant states:[4]

> The impermissible vagueness is in these particular phrases: (1) "wandering or loitering abroad"; (2) "abroad under other suspicious circumstances"; and (3) "a satisfactory account of himself."

To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment. *Winters v. New York,* 333 U. S. 507, 92 L. Ed. 840, 68 Sup. Ct. 665 (1948). A law that fails to give fair notice of what acts will be punished is violative of due process. *Ibid.* It is fundamental that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or to stand still. The right to be let alone is inviolate; interference with that right is to be tolerated only if it is necessary to protect the rights and the welfare of others. *State v. Caez,* 81 N.J. Super. 315, 195 A.2d 496 (1963); *Territory of Hawaii v. Anduha,* 48 F.2d 171 (9th Cir. 1931); *St. Louis v. Gloner,* 210 Mo. 502, 109 S.W. 30 (1908); *Pinkerton v. Verberg,* 78 Mich. 573, 44 N.W. 579 (1889).

An ordinance that restricts such freedom must contain standards that are reasonable and that do not permit arbitrary enforcement. If an ordinance imposes sanctions authorized by language that is doubtful, vague, or uncertain, it violates fundamental concepts of justice and due process of law. *State v. Caez, supra.*

---

[4]Defendant does not challenge as vague the "one-half hour after sunset to one-half hour before sunrise" proviso; hence, we do not reach the question in this decision of whether this manner of describing the period of time in which loitering is prohibited is sufficiently explicit so that the average citizen could regulate his conduct accordingly. We are not convinced, however, that the average citizen knows the daily time fluctuations of sunset and sunrise.

■ Merriam-Webster Third New International Dictionary (1961) defines "loiter" as

> fritter away time . . . be . . . unduly slow in doing something . . . remain in or near a place in an idle or apparently idle manner

and "wander" as

> to move about without a fixed course, aim, or goal
> . . . .

Black, Law Dictionary (4th ed. 1951) defines "loiter" as:

> To be dilatory; to be slow in movement; to stand around or move slowly about; to stand idly around; to spend time idly; to saunter; to delay; to idle; to linger; to lag behind.

It defines "wander" as:

> To ramble here and there without any certain course.

The city argues that its ordinance is not to be construed as authorizing inquiry of a person whose conduct manifests a *lawful* purpose. Citing and relying upon cases holding that loitering connotes an *unlawful* purpose, the city contends that only unlawful purposes are within the ambit of its ordinance. We cannot agree. As the late Judge Rudkin said in *Territory of Hawaii v. Anduha,* 48 F.2d 171 (9th Cir. 1931):

> These words [idle, loiter, loaf] have no sinister meaning and imply no wrongdoing or misconduct on the part of those engaged in the prohibited practices.

Accordingly, we are not convinced by those cases relied upon by the city, insofar as they hold that "loiter" connotes unlawful activity. Our conclusion is fortified by *Thompson v. Louisville,* 362 U.S. 199, 4 L. Ed. 2d 654, 80 Sup. Ct. 624 (1960). The court intimated that "loitering" in a "satisfactory account" type of ordinance is to be given its lay meaning. As indicated, the lay meaning of loitering cannot reasonably connote unlawful activity.

■ Further, the city contends that good intentions and self-restraint of law enforcement officers will not result in unjust prosecution. This assurance, however, does not save the ordinance because "well-intentioned prosecutors . . .

do not neutralize the vice of a vague law." *Baggett v. Bullitt,* 377 U.S. 360, 373, 12 L. Ed. 2d 377, 84 Sup. Ct. 1316 (1964). The law should be so drawn as to make it inapplicable to cases which obviously are not intended to be included within its terms.

█ The Seattle ordinance imposes sanctions upon conduct that may not manifest an unlawful purpose,[5] and, therefore, is violative of due process of law. The language of the ordinance is too broad; it is vague. A citizen cannot determine its meaning so that he may regulate his conduct. There is nothing in the ordinance that would enable him to know the dividing line between innocent loitering (for example, window shopping) and criminal loitering. Loitering ordinances that fail to spell out this distinction have been struck down.[6] *People v. Diaz,* 176 N.Y.S.2d 313, 151 N.E.2d 871 (1958); *Akron v. Effland,* 112 Ohio App. 15, 174 N.E.2d 285 (1960); *Cleveland v. Baker,* 83 Ohio L. Abs., 502, 167 N.E.2d 119 (1960); *St. Louis v. Gloner,* 210 Mo. 502, 109 S.W. 30 (1908). See "Vagrancy and Arrest on Suspicion" by Mr. Justice Douglas in 70 Yale L.J. 1 (1960-1961).

The Seattle ordinance makes no distinction between conduct calculated to harm and that which is essentially innocent.

█ As we interpret the cases dealing with loitering ordinances, the right of a law enforcement officer to inquire of persons wandering abroad at night is limited to those persons whose *conduct* gives the officer reason for alarm

---

[5]See *Huddleson v. Hill,* 229 Cal. App. 2d 618, 40 Cal. Rptr. 581 (1964); *People v. Bruno,* 211 Cal. App. 2d Supp. 855, 27 Cal. Rptr. 458 (1962); *In re Cregler,* 56 Cal. 2d 308, 363 P.2d 305 (1961); *State v. Starr,* 57 Ariz. 270, 113 P.2d 356 (1941).

[6]We are aware of *Columbus v. McCrory,* 38 Ohio L. Abs. 142, 49 N.E.2d 583 (1942), in which an opposite result was reached without any underlying rationale. We are of the opinion that *McCrory* is an unfortunate deviation from the recognized limits of permissible municipal regulation.

that they are engaged in unlawful activity.[7] The crime, however, cannot be the failure to give answers satisfactory to the officer.

If the ordinance means that the legality of a person's action depends upon the opinion of a policeman, it would be unconstitutional. *Portland v. Goodwin,* 187 Ore. 409, 426, 210 P.2d 577 (1949). As expressed by Mr. Justice Black, our government is one of clearly defined laws rather than "government by the moment-to-moment opinions of a policeman on his beat." *Cox v. Louisiana,* 379 U. S. 559, 579, 13 L. Ed. 2d 487, 85 Sup. Ct. 476 (1965). An ordinance that allows a person to stand on a public sidewalk only at the whim of a police officer is unconstitutional. *Shuttlesworth v. Birmingham,* 382 U. S. 87, 15 L. Ed. 2d 176, 86 Sup. Ct. 211 (1965).

In *Portland v. Goodwin, supra,* the issue was whether or not the Portland ordinance (making it unlawful to be on the streets "without having and disclosing a lawful purpose") meant that a person had to disclose his purpose to a police officer, with the latter determining the lawfulness of the disclosed purpose. The trial court construed the ordinance in this manner, but the supreme court disagreed, stating: "The policeman does not determine the issue of guilt or innocence in cases of this kind . . . " The court admitted that since innocuous conduct cannot be punished, if the trial court's construction of the ordinance had been correct the ordinance would be unconstitutional. The Supreme Court, however, found "no justification for so strained a construction." 187 Ore. 409 at 426. In the Seattle ordinance, we believe such a "strained" construction is dictated by the words of the ordinance.

The rationale of *Portland v. Goodwin, supra,* is set forth in a supplemental opinion given when the petition for rehearing was denied:

---

[7]*Dominguez v. Denver,* 147 Colo. 233, 363 P.2d 661 (1961); *Akron v. Effland,* 112 Ohio App. 15, 174 N.E.2d 285 (1960); *Harris v. District of Columbia,* 132 A.2d 152 (Mun. Ct. App. for D.C. 1957). See also Klahr, Validity of "Satisfactory Account" Clauses in Vagrancy Ordinances, 4 Ariz. L. Rev. 284 (1962-1963), and cases therein cited.

The overt act which violates the ordinance and thus authorizes arrest is the willful act of going upon the street during the prohibited hours and then and there manifesting by conduct an unlawful purpose. 187 Ore. at 429.

The importance of loitering ordinances cannot be minimized. They are necessary for the protection of society and for the preservation of the public peace. They must, however, be drafted in a manner that protects the rights of the individual as well as the rights of the public.

We believe the best considered comment laying down certain guidelines is found in the Model Penal Code, Proposed Official Draft § 250.6 of The American Law Institute (1962):

Section 250.6 Loitering or Prowling.

A person commits a violation if he loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the actor or other circumstance makes it impracticable, a peace officer shall prior to any arrest for an offense under this section afford the actor an opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true and, if believed by the peace officer at the time, would have dispelled the alarm.

We need not consider the other constitutional questions raised.

The judgment of dismissal is affirmed.

HILL, DONWORTH, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.

FINLEY, C. J. (concurring in the result)—I concur in the result on the basis that the words, "wandering or loitering abroad," and perhaps even the phrase, "fail to give a satisfactory account of himself," are too broad and vague to provide an understandable and workable constitutional standard respecting the interpretation and application of the ordinance in question. I reach this conclusion, although I am not convinced that in terms of final legal application and effect the ordinance involves a police rather than a judicial determination as to what would constitute a satisfactory account of himself by a person interrogated or apprehended under the ordinance. In this connection, it is my view that a "loitering ordinance" could very well be a valuable law enforcement tool, in fact perhaps a necessary police measure, for the protection of society and for the preservation of public peace and order. I would hope that the majority opinion will not make it unreasonably difficult and certainly will not be construed as an insurmountable obstacle to the drafting of a "loitering ordinance" which would conform to reasonable and rational standards apropos of constitutional validity. In this connection, reference to and quotation by the majority opinion from the Model Penal Code, Proposed Official Draft § 250.6 of The American Law Institute (1962) seems to me to be both constructive and encouraging.

HALE, J. (concurring specially)—Save for its reference to the Model Penal Code, Proposed Official Draft § 250.6, American Law Institute (1962), I concur in and have, accordingly, signed the majority opinion.

I am reluctant to recommend the quoted section as a model of precision and clarity in defining criminal loitering and prowling, because I think the quoted definition suffers from the same qualities of vagueness and imprecision which we found in the Seattle city ordinance.