Alfred H. Kleimaft, J.
Defendant was arrested for violation of subdivision 6 of section 240.35 of the Penal Law for loitering on suspicion that he was in criminal possession of stolen property. Incidental to the arrest, a search of defendant’s person resulted in the seizure of certain contraband. Defendant was thereafter charged with violations of section 220.05 (possession of a dangerous drug), section 220.45 (possessing a hypodermic instrument), section 140.10 (trespass), section 140.35 (possession of burglars tools) and subdivision 6 of section 240.35 (loitering) of the Penal Law. He was not charged with the crime of possession of stolen goods; nor have the People urged that there was probable cause .to arrest the defendant on this charge, there admittedly being insufficient evidence to support same.
The information charges the following: “ on April 20, 1970, at about 11:40 p.m., at 224 East 28th St., (Lobby) * * * Deponent observed defendant in the lobby of .the above building carrying a box containing women’s clothing and carrying a woman’s coat over his arm. Defendant was unable to give a satisfactory explanation for his presence in the building. Deponent further states that the above building is a N. Y. city housing project and that the defendant did not have permission or authority to be inside said building. Deponent further [sjtates that the defendant had a screw driver in said box and that he had in his pocket a case containing a hypodermic needle and syringe and a bottle cap and cotton containing a res [i] due of heroin.”
Defendant moves to dismiss the information and in the alternative to suppress the evidence allegedly seized as a result of an unlawful search and seizure.
Pursuant to subdivision ’(2) of section 40 of the New York City Criminal Court Act, a preliminary hearing was held and *1043 simultaneously therewith a hearing on the motion to suppress.
Patrolman Richard Beers testified that after receiving an anonymous radio call that someone was selling stolen property at 224 East 28th St., he proceeded together with three fellow officers to the aforesaid premises. Upon entering the door to the building, which was open at the time, he observed the defendant in the lobby of the building carrying a box and a black coat over his arm and immediately approached defendant and asked him what he was doing in the building.
The officer recalls that the defendant stated that he had ‘1 come to visit or leaving a friend’s apartment ” and first stated that the apartment was on the 9th floor and subsequently said it was on the 7th floor. He further testified that the defendant said the property was his aunt’s and then changed his story and said it belonged to his mother to whom he was taking the property. At that point, Patrolman Beers placed the defendant under arrest ‘1 for loitering and that he was unable to account for his presence.” Beers admitted that only after the arrest did he recognize the coat as a ladies coat and the box was then opened and found to contain ladies garments, a screw driver and a watch. Upon further search, a hypodermic needle, syringe and bottle cap, etc. were found on defendant’s person.
At the close of the hearing the court orally denied the motion to dismiss the information, and reserved decision on the motion to suppress. Upon further argument on the motions, the issue of the constitutionality of the loitering statute was first raised and the court agreed to reconsider its decision on the former motion.
The defendant contends that the People have failed to make out a prima facie case of loitering, because defendant was only seen by the officer for a couple of minutes, and that, therefore, there was no evidence of loitering. Upon a preliminary hearing, the court is only charged with the determination of the probability that a crime has been committed and that there is sufficient cause to believe the defendant committed same. (Of. Code Crim. Pro., § 208.) Considering the time that must have elapsed from the receipt of the anonymous call until the observation of the defendant by the officer, the court may infer that defendant “loitered” in the lobby of the building for a significant length of time — assuming, but not deciding, that the time factor is a material element under this subdivision. Although a conviction based on such evidence might not he upheld, it is sufficient to hold the defendant for trial. (People ex rel. Ehrman v. Kearney, 266 App. Div. 793, affd. 292 N. Y. 627.) (As Judge Van Voobhis said in his concurring opinion in *1044 People v. Johnson, 6 N Y 2d 549, 554, “ ‘ Loiter ’ assumes different meanings according to the circumstances.”) Upon a preliminary hearing, this court “ is not required to exact the full measure of proof necessary to secure a conviction ”. (People ex rel. Willett v. Quinn, 150 App. Div. 813, 827.)
Accordingly, there being some evidence that defendant was loitering, that there were circumstances justifying the officer’s suspicion that he was engaged in a crime (i.e. the anonymous call) and that defendant failed to give a reasonably credible account of his conduct, the motion to dismiss on this ground is denied. The court, therefore, must necessarily decide the constitutional issue.
At the outset it should be stated that doubt as to the constitutionality of this statute was already expressed in People v. Williams (55 Misc 2d 774). It should also be further noted that the District Attorney submitted a brief stating ‘1 the District Attorney’s Office of the County of New York takes no position as to said statute’s constitutionality at this time.” (It was for the latter reason that the court exercised its discretion, pursuant to section 71 of the Executive Law, giving the Attorney-Ceneral of the State of New York the opportunity to appear as a party to this proceeding.)
Subdivision 6 of section 240.35 of the Penal Law reads as follows: “A person is guilty of loitering when he * * * Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes ’ ’.
In examining the statute, the court has .taken into consideration the strong presumption that a statute duly enacted by the Legislature is constitutional and its invalidity must be demonstrated beyond a reasonable doubt. (People v. Pagnotta, 25 N Y 2d 333.)
There are two substantive elements to this crime: 1. Loitering ‘ ‘ in or about a place ’ ’ and 2. Under circumstances justifying suspicion that a person ‘1 may be engaged or about to engage in crime.” The “ inquiry ” by the officer is not a substantive element of the crime. The common-law right of police inquiry of suspicious persons as to their conduct and purposes pre-existed this statute as it did section 180-a of the Code of Criminal Procedure — and continues. (People v. Rosemond, 26 N Y 2d 101; People v. Morales, 22 N Y 2d 55, vacated and remanded 396 U. S. 102; see, also, Terry v. Ohio, 392 U. S. 1; *1045 People v. Peters, 18 N Y 2d 238; People v. Rivera, 14 N Y 2d 441.) The inquiry is “not a substantive factor in what constitutes the offense, but is merely a procedural condition which has to be fulfilled ”. (People v. Bell, 306 N. Y. 110, 115; also, People v. Dreares, 15 A D 2d 204, 207, affd. 11 N Y 2d 906; Ricks v. United States, 228 A. 2d 316 [D. O.].) The “ inquiry ” restricts the scope of .the statute to the advantage of the accused. (People v. Merolla, 9 N Y 2d 62.) Were this principle not applicable to this statute — as I believe it is — and were the inquiry and any responses to the inquiry a substantive element of the crime, it could possibly run counter to Miranda v. Arizona (384 U. S. 436). Considering the two substantive elements of this crime, each standing alone is clearly unconstitutional.
As to the first element, in People v. Diaz (4 N Y 2d 469) the Court of Appeals declared unconstitutional a statute making it a crime to “ lounge or loiter about any street or street corner.” Certainly a statute making it a crime to loiter “in or about a place without apparent reason ’ ’ is even more vague, indefinite and uncertain, and therefore, on its face unconstitutional. No statute may unreasonably interfere with a person’s freedom to move about or to stand still. (See, similarly, City of Cleveland v. Baker, 167 N. E. 2d 119 [Ohio]; City of St. Louis v. Gloner, 210 Mo. 502; Soles v. City of Vidalia, 92 Gra. App. 839; State v. Caez, 81 N. J. Super. 315; Territory of Hawaii v. Anduha, 48 F. 2d 171; see, also, Shuttlesworth v. Birmingham, 382 U. S. 87; Commonwealth v. Carpenter, 325 Mass. 519; City of Akron v. Effland, 112 Ohio App. 15.)
As to the second element, it is equally clear that a statute providing .that a person may be arrested by reason of “ circumstances which justify suspicion ” of the commission of a crime is unconstitutional. An arrest to be constitutionally valid depends on whether ‘ ‘ at the moment the arrest was made, the officers had probable cause to make it”. (Beck v. Ohio, 379 U. S. 89, 91.) “ Since Marshall’s time, at any rate [probable cause] has come to mean more than bare suspicion * * * These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charge of crime * * * To allow less would be to leave law-abiding citizens at the mercy of the officers-’ whim or caprice.” (Brinegar v. United States, 338 U. S. 160, 175, 176.) ‘ ‘ Arrests for suspicion are not countenanced by the Bill of Rights. The fourth amendment allows arrest — as well as searches — only for ‘probable cause’”. (Justice William O. Douglas, Vagrancy and Arrest on 'Suspicion, 70 Yale L. J. 1,13.)
Is the constitutionality of this statute saved by the conjune *1046 tive use of these two elements which standing alone are unconstitutional? I think not. As noted in People v. Diaz (4 N Y 2d 469, 471, supra) ‘' Whenever a conviction for loitering has been upheld, it is because the statute uses the term ‘ loiter ’ or ‘ loitering ’ to point up the prohibited act, either actual or .threatened.” Thus, loitering statutes have been held constitutional where they referred to specific places (i.e. People v. Bell, 306 N. Y. 110, supra, (railroad or subway facilities); People v. Johnson, 6 N Y 2d 549, supra, (school buildings); People v. Merolla, supra, (waterfront facilities) or specific conduct i.e. People v. Pagnotta, 25 N Y 2d 333 (using or possessing narcotic drugs). But, as stated in People v. Pagnotta (supra, p. 337) “ A statute which fails to distinguish between innocent conduct and action which is calculated to cause harm may not be sustained.” What is the prohibited act which is pointed up in this statute — circumstances justifying the suspicion of officers? A criminal statute must be sufficiently definite, clear and positive to give unequivocal warning to citizens of the rule which is to be obeyed. (People v. Firth, 3 N Y 2d 472, 474.) But how does a person innocently standing around, protect himself from the suspicion of officers? Suspicious acts observed by officers may be as consistent with innocence as with guilt.
This statute was based on Tentative Draft No. 13 of the American Law Institute’s Model Penal Code (§ 250.12). But in the final draft, substantial changes were made. The Reporter wrote “We have changed the basis of the offense from justifiable ‘ suspicion ’ that the actor was engaged or about to engage in crime, to justifiable ‘ alarm ’ for the safety of persons or property. This seems desirable to save the section from attach and possible invalidation as a subterfuge by which the police would be empowered to arrest and search without probable cause.” (Model Penal Code, § 250.6, p. 227, emphasis supplied.)
The net effect of our statute is nothing less than such subterfuge. The Legislature may not ‘ ‘ authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which it attaches to such conduct.” (Sibron v. New York, 392 U. S. 40, 61.)
While this court cannot fail to .take judicial note of the waning respect for authority and the resultant increase in crimes, it is in difficult times like these that our courts — all our courts — must be vigilant .to act as guardians of our heritage. As our Supreme Court stated in Henry v. United States (361 U. S. 98, 100, 101): “ The requirement of probable cause has roots that are deep in our history. The general warrant, [declared illegal by the House of iCommons in 1776] in which the name of the *1047 person to be arrested was left blank, and .the writs of assistance, against which James Otis inveighed [Quincey’s Mass Rep. 1761-1772] both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of ‘ probable cause ’ before a magistrate was required. The Virginia Declaration of Rights, adopted June 12, 1776, rebelled against that practice * * * as the early American decisions * * # show, common rumor or report, suspicion, or even ‘ strong reason to suspect ’ was not adequate to support a warrant for arrest. ’ ’
That principle has survived .to this day — it is that principle which must be zealously guarded by our courts. Long ago our highest court stated that it is “ the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.” (Boyd v. United States, 116 U. S. 616, 635.)
‘1 Arrest on mere suspicion collides violently with the basic human right of liberty. It can be tolerated only in a society which is willing to concede .to its government powers which history and' experience' teach are the inevitable accoutrements of tyranny.” (Hogan and Snee, The McNabb-Mallory Rule, 47 Georgetown, L. J. 1, 22; cited in Henry v. United States, supra, p. 101.) We cannot have government “ by the moment-to-moment opinions of a policeman on his beat.” (Cox v. Louisiana, 379 U. S. 536, 579.)
Maybe the “ criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own law, or worse its disregard of the charter of its own existence.” (Mapp v. Ohio, 367 U. S. 643, 659.) “ For the accused, of course, freedom is always at stake in a serious criminal case, but in a larger sense it is .the freedom of each of us which is drawn into question.” (Standards Relating to the Prosecution Function and the Defense Function, American Bar Association Project on Standards for 'Criminal Justice, p. 15.)
For the reasons stated, it is the opinion of this court that this statute is too vague, indefinite and uncertain to define a crime and fails to provide the necessary standards by which the prohibited conduct may be tested. Accordingly, I hold subdivision 6 of section 240.35 of the Penal Law is, on its face, unconstitutional. (See, similarly, City of Seattle v. Drew, 70 Wn. 2d 405.)
The Attorney-General argues that the defendant was arrested, inter alia, for criminal trespass (Penal Law, § 140.10), and that this validates the search and seizure as incidental to the arrest. *1048 I find otherwise. The hallways of multiple dwellings must be considered public places within the trespass statute. (Cf. People v. Peters, 18 N Y 2d 238, 244.) .Subdivision 5 of section 140.00 provides: “ A person who, regardless of his intent, enters upon or remains in or upon premises which are at the time open to the public does so with license or privilege unless he defies a lawful order no.t to enter or remain” (emphasis supplied). There being no evidence, nor any claim, that a lawful order not to enter or remain in the building was given, I hold the defendant cannot be held for trial on the charge of criminal trespass (People v. Brown, 25 N Y 2d 374).
In view of the above holdings, the motion to dismiss the information is granted .to the extent that the charges of loitering (§ 240.35, subd. 6) and criminal trespass (§ 140.10) are dismissed.
The defendant also moved to suppress the seized contraband which is the basis for the remaining charges. An arrest is not justified by what a subsequent search discloses. (Johnson v. United States, 333 U. S. 10.) “ In law [the search] is good or bad when it starts and does not change character from its success.” (United States v. Di Re, 332 U. S. 581, 595.) Having held that there was no lawful arrest of the defendant, it necessarily follows that the search and seizure incidental thereto were illegal.
Accordingly, the motion to suppress is granted.