Breitel, J. (dissenting).
I would affirm.
Defendant was convicted of a violation of section 240.35 (subd. 6) of the Penal Law, which, in pertinent part, provides:
“ A person is guilty of loitering when he:
4!, 4V jj. TP TP W
“6. Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or *575 fails to give reasonably credible account of his conduct and purposes ”.
The statute is one of many modern efforts to replace the utterly vague and status-type offenses that have been struck down as unconstitutional, despite their antiquity, which have borne the rubric of vagrancy or disorderly person offenses (e.g., Fenster v. Leary, 20 N Y 2d 309; Papachristou v. City of Jacksonville, 405 U. S. 156; Shuttlesworth v. City of Birmingham, 382 U. S. 87; see, Ann., Vagrancy Statutes—Validity, 25 ALB. 3d 792; Ann., Loitering Statutes—Validity, 25 ALB 3d 836; Ann., Disorderly Conduct—Vagueness, 12 ALB 3d 1448). These modern efforts have been generally accepted as desirable in order to give law enforcement officers powers to inhibit the consummation of “ inchoate ” crimes by footpads, pickpockets, burglars, and the like, on the hunt in pursuit of victims.
In this case, the police had been advised that certain residential premises would be temporarily unoccupied. On patrol, they observed defendant standing behind a tree, at 1:00 a.m., seeming to be examining the unoccupied premises. When questioned by the police, he refused to explain his presence, but more important, or even to identify himself. No other person was present and there was, of course, no indication of a tryst.
The statute, it is suggested, is not so vague as to preclude the denotation of conduct giving justifiable belief that a crime is being or is about -to be committed. It requires the following elements in conjunction :
1. Loitering without apparent reason.
2. Additional circumstances giving rise to suspicion of present or intended criminal activity.
3. Befusal to respond to inquiry by a peace officer by identifying one’s self and explaining the questioned conduct.
The arrest and conviction are not for any one of these grounds but were and must have been for all three. Moreover, to satisfy the important second requirement referring to “ circumstances ” there must be objective facts justifying suspicion. The measure would be the factual circumstances and not the police officer’s idiosyncratic capacity for suspicion. The quality of the factual circumstances and the strength of the inference that the defendant “ may be engaged or about to engage in crime ” would be for the courts to assess.
*576 The elements are amply supplied in this case: the sparsely populated residential area involved; the temporarily unoccupied residence; the defendant standing behind a tree in front of the residence; the unusual hour of 1:00 a.m. ; and the absence of any other persons until the patrol car came along. Those circumstances bespeak “ easing ” the house for a possible burglary; but, as with any inchoate offense, there was no action sufficient to establish even a criminal attempt. These circumstances did not make unreasonably intrusive the police inquiry, and when that inquiry was denied, even as to defendant’s identity, simple reason suggests removing the defendant from the scene. As the prosecutor argued on the appeal, what else were the police to do at that hour, unless they were to drive away and let happen what might happen.
The majority in striking down the statute does not suggest that statutes defining inchoate offenses are necessarily invalid; they simply find this one wanting without suggesting what kind of statute would satisfy the public need (compare Seattle v. Brew, 70 Wn. 2d 405, where the court struck down a vague Washington statute and suggested section 250.6 of the A. L. I. Model Penal Code as a guide to drafting a new statute). That, of course, is the majority’s privilege, as it always is of any court. However, in the light of the serious effort by draftsmen for many years, including those of the American Law Institute, to evolve satisfactory language, one would hope that future draftsmen could be given more constructive encouragement.
True, the majority points to the draft of a similar provision in the A. L. I. Model Penal Code (§ 250.6), which, to be sure, has added words, but none that are not embraced in the language of the instant statute. ‘ ‘ Suspicion of crime ’ ’ obviously relates to “alarm for the safety of persons or property”. The Model Code in using as illustrations £ ‘ Among the circumstances which may be considered ”, defined factors in the disjunctive, two of which were present here, namely, refusal to identify one’s self and manifestly endeavoring to conceal one’s self (behind a tree). I would prefer the more detailed language of the Model Penal Code "but I have difficulty in seeing that the detail goes beyond the encompassing language of the instant statute.
The majority resists the criterion of “ suspicion ” in the instant statute. But the resistance, it is suggested, is misplaced. *577 The draftsmen wisely avoided the phrase “probable cause ” associated with basis for arrest for attempt or completed crime, and, therefore, inappropriate for defining an inchoate offense. Mere suspicion is inadequate for any police action because it relates to the officer’s state of mind only. The phrase in the instant statute is “circumstances which justify suspicion”. This is more than police suspicion and less than probable cause to arrest for crime, the very middle ground to be reached. In this very troublesome and often frustrating field for legislative draftsmen, the majority gives no guidance whether such a middle ground is constitutionally permissible; that is, whether it is sufficient to justify the limited police intrusiveness authorized by the statute, and if so, how to express it in sufficiently definite terms. Nor is any guidance given whether the failure to respond to police inquiry, a critical element in the control of inchoate crimes, is a constitutionally permissible device.
For all these reasons, I would construe the statute narrowly and thus sustain its validity. Circumstances which justify suspicion must be objectively tested, as the statute contemplates, based either on observation or reliably reported information, which must support a strong inference, less than probable cause for an arrest, but more than speculation or merely subjective distrust that the person is likely to be engaged or about to engage in crime.
Accordingly, I dissent and vote to affirm the conviction.
Chief Judge Fuld and Judges Jones and Wachtler concur with Judge Burke ; Judge Breitel dissents and votes to affirm in a separate opinion in which Judges Jasen and G-abrielli concur.
Order reversed and the complaint dismissed.