## Commonwealth v. Speraw

*David R. Dautrich*, Assistant District Attorney for the Commonwealth.

*John S. Elder*, for defendant.

SAYLOR, *J.*, April 20, 1983 — In these appeals from summary convictions the defendant challenges the constitutionality of Section 9(a) of the Loitering Ordinance[1] of the City of Reading, which states:

No person shall loaf, loiter, lounge or congregate on the streets or corners in front of or about any

---

1. Bill No. 11, enacted February 11, 1970, amended Bill No. 27, enacted September 23, 1953, by adding Section 9(a) following Section 9 thereof. Section 9 of Bill No. 27 reads: "No person shall unnecessarily or willfully obstruct or interfere with the travel upon any sidewalk, alley, street, bridge or public passageway in any building, provided that this ordinance shall not be held to restrict peaceful picketing, so long as one-half of the width of the sidewalk is kept clear for the use of other pedestrians." Section 9 is neither charged nor challenged here. Section 10 of Bill No. 27 subjects the violator to pay a fine not exceeding $300 for each offense and costs. If the fine and costs are not paid, imprisonment in the Berks County Prison is prescribed, not to exceed 90 days. In both cases, the

place of business or other public place within the City of Reading.

Defendant contends that Section 9(a) is unconstitutional on its face because it is too broad, thereby impinging upon First Amendment freedoms. She further argues that Section 9(a) is void for vagueness under due process rights and, therefore, unconstitutional as applied to her conduct. For the reasons that follow, we agree with both contentions and defendant's convictions must be reversed.

## I

The facts are not in dispute. These convictions arise out of incidents that occurred in the 600 and 700 blocks of Chestnut Street in the City of Reading. This area is regarded by the city police as a prostitution district and is regularly patrolled by them.

The first incident occurred on March 26, 1982. At approximately 9:35 pm. Patrolman Richard Gery, while patrolling the area in a marked vehicle, observed defendant and another female standing at the northwest corner of Lemon and Chestnut Streets. They were waving and yelling at passing motorists. Gery stopped and gave warning that both would be cited for loitering if they continued to wave at passing motorists. Twenty minutes later Gery saw them a half block away from the original stop doing the same thing. He then cited defendant for violating Section 9(a). The citation reads: "Subject, after numerous warnings about loitering,

---

District Justice went beyond this penalty provision and imposed both a fine and a jail sentence upon conviction of the loitering offense. Because of our disposition of these cases on the constitutional issues raised, it will not be necessary to deal with the legality of the sentences imposed.

lounging, loafing in and about prostitution area continued to loiter about the area in total disregard to warnings." Defendant was convicted before the district justice and sentenced to prison for 15 days and to pay a fine of $100 and costs.

The second incident occurred on April 8, 1982. At approximately 8:40 pm, Criminal Investigator Francis Drexler saw defendant walking slowly and standing idle for short periods of time in the 600 block of Chestnut Street. He watched her for four to five minutes. He then saw her walk up to the passenger side of a car operated by a male motorist, which had stopped. Drexler observed defendant at the stopped car and cited her for violating Section 9(a). After being cited, defendant and the motorist went their separate ways. This citation reads: "Subject was loitering, standing idle talking to a male motorist." Again convicted, defendant was sentenced to another 15 days in prison and ordered to pay a fine of $100 and costs.

Defendant appealed both convictions and they were consolidated for hearing by agreement.


## II

It is basic to our rules of law that an enactment is void if it is vague. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Chester v. Elam, 408 Pa. 350, 184 A.2d 257 (1962). An enactment is vague if "men of common intelligence must necessarily guess as to its meaning." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). This vagueness doctrine encompasses two notions. The first concerns due process, the second concerns the First Amendment. Vague laws, whether

or not they regulate speech or other First Amendment activities; run afoul of the due process clause because they fail to give notice of what acts they forbid and because they give lawmen excessive discretion which is susceptible to arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 336 L.Ed. 2d 222 (1972). A vague law, either because it is unclear or too broad, becomes a police dragnet which permits erratic arrests.[2] The second prong of the vagueness doctrine deals with laws that are overbroad in scope. When enactments are too broad, even though the language might be clear, they may implicate First Amendment rights and thereby inhibit constitutionally protected activity. In order to protect First Amendment rights the United States Supreme Court has devised the "chilling effect doctrine" according to which an enactment will be ruled unconstitutional when a potential exercise of free speech or assembly has been deterred or "chilled" due to the threat of punishment.[3] As explained by the Supreme Court, the highly cherished First Amendment freedoms need "breathing space to survive." N.A.A.C.P. v. Button, 371 U.S. 415, 433; 83 S.Ct. 328, , 9 L.Ed. 2d 408, 418 (1963). And the exercise of these freedoms might be chilled by the mere threat of sanctions.

Vagueness challenges which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand and cannot be measured against hypothetical conduct that the statutory

---

2. See Note, The Void for Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960).

3. See Note, The First Amendment Overbreadth Doctrine, 83 Harv. L. Rev. 844 (1970); Note, The First Amendment Rule Against Overbreadth, Vol. 52 Temple L. Q. 259 (1979).

language could arguably embrace. United States v. Mazurie, 419 U.S. 544; 95 S.Ct. 710, 42 L.Ed. 2d 706 (1975); Commonwealth v. Heinbaugh, 467 Pa. 1, 354 A.2d 244 (1976). In such cases, the court would be required to decide the rights of parties not presently before it at the urging of a party who is without standing to assert such rights. It is for this reason that facial attacks on the validity of enactments are not generally permitted. United States v. Powell, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed. 2d 228 (1975). Additionally, when faced with the constitutionality of an enactment which is being challenged on grounds of vagueness and overbreadth we are obligated, if possible, to narrow and limit its scope in light of protective constitutional guarantees so as to render it constitutional. Commonwealth v. Mastrangelo, 489 Pa. 254, 414 A.2d 54 (1980); In re William L., 477 Pa. 322, 383 A.2d 1228 (1978). However, where First Amendment rights are involved, a facial attack is allowed without reference to the facts of the particular case. Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed. 2d 214 (1974). And, the question of whether First Amendment rights are involved must be determined by referring to the language of the enactment and without regard to the facts. United States v. Mazurie, supra.

## III

From the language of Section 9(a) it is clear that First Amendment rights are involved. Section 9(a) prohibits a person from "congregating" and the word congregate is synonymous with "assemble." The First Amendment protects rights of people to

peacefully assemble,[4] and consequently defendant may attack Section 9(a) notwithstanding that her own conduct may not be protected. Although regulating the use of streets and sidewalks to assure safety and convenience of the people is permissible, and the right of assembly is not unlimited, a municipality may not forbid all street and sidewalk assemblies. Yet, this is exactly what the language of Section 9(a) does. Section 9(a) provides no standard for the determination of police or courts which assemblies are permitted and which are forbidden. Thus, the situation is the same as if Section 9(a) itself expressly provided that there can only be street and sidewalk assemblies in the unbridled discretion of the city police. We conclude that such unfettered discretion in local officials in regulating the use of streets and sidewalks for assemblies is an unwarranted abridgement of defendant's freedom of assembly secured to her by the First Amendment as applied to this state by the Fourteenth Amendment.

## IV

We, of course, recognize that defendant was not arrested for congregating, she was arrested for loitering. But, Section 9(a) again fails to pass constitutional muster as applied to the specific conduct involved in these cases. The language of Section 9(a) is so vague and uncertain that a person of common

---

4. The First Amendment to the United States Constitution specifically states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

intelligence would have to guess as to what it means and what conduct it prohibits, and, as we have discussed earlier, these failings violate due process of law. In the first place the terms "loaf," "loiter," "lounge" and "congregate" have no sinister meaning in themselves, and loitering is not criminal per se. Yet, Section 9(a) fails to define when and under what circumstances such conduct is prohibited. There are simply no guidelines clearly marking the boundaries between prohibited and allowable conduct. Webster's New Collegiate Dictionary (copyrighted 1981) says loitering means: "1: to delay an activity with aimless idle stops and pauses: dawdle 2 a: to remain in an area for no obvious reason: hang around b: to lag behind." Since when is such behavior criminal? As Justice Douglas reminds us, the innocent acts of wanderers and loafers have been extolled by "Walt Whitman's writings, especially in his 'Songs of the Open Road,' They are reflected, too, in the spirit of Vachel Linday's 'I Want to Go Wandering' and by Henry D. Thoreau,"[5] By its terms, Section 9(a) prohibits windowshopping, strolling aimlessly on Penn Square, or sitting innocently on a park bench.

Another aspect of vagueness appears when we focus, not on the lack of notice, but on the unfettered discretion Section 9(a) places in the hands of the police. This point becomes obvious when we look to the real reason for defendant's arrest. In both cases she was arrested for suspected prostitution, not for loitering. Parenthetically we note in passing that if she was plying her trade, she certainly wasn't loitering in the strict definitional meaning of the word. As

---

5. See Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839; 31 L.Ed. 2d 110, 117 (1972).

we have seen, to loiter means to idle aimlessly. She was doing just the opposite. Her activities would be more appropriately described as "hustling" and if the officer had probable cause to believe that she was loitering for the purpose of being hired to engage in sexual activities, then she should have been arrested for that offense under the Crimes Code.[6] We must bear in mind that under the Fourth and Fourteenth Amendment standards police are allowed to make arrests only on "probable cause." In Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed. 2d 110, 111 (1972), the United States Supreme Court, in striking down a city vagrancy ordinance for vagueness, said:

Arresting a person on suspicion, like arresting a person for investigation is foreign to our system. . . . A direction by legislation to the police to arrest all 'suspicious persons' would not pass constitutional muster. A vagrancy prosecution may be merely the cloak for a conviction which could not be obtained on the real but undisclosed grounds for the arrest.

Where as here no standards are fixed to guide the exercise of discretion given by the ordinance, the scheme permits and encourages arbitrary and discriminatory law enforcement. In its vagueness, Section 9(a) is a dragnet which allows unbridled street sweeping operations by police making it easy to round up so-called undesirables. The rule of law requires more. Section 9(a) is too broad and unrestricted in its sweep. It plainly offends Constitutional freedoms.

---

6. 18 Pa. C.S.A. §5902.

Finally, courts in other jurisdictions for some or all of these reasons have arrived at this same conclusion in challenges to similar loitering statutes.[7]

## V

Accordingly, we must reverse these convictions and find the defendant not guilty in both cases and enter the following.

## ORDER

April 20, 1983, after hearing and argument, and for the reasons set forth in our opinion of even date, defendant is found not guilty in both of the above captioned cases and her appeals are sustained with costs upon the County of Berks. Any fines and costs heretofore paid by defendant shall be refunded to defendant.

The prothonotary is directed to forward to the issuing authority a certified copy of this order with the supporting opinion.

---

7. See People v. Diaz, 4 N.Y. 2d 469, 151 N.E. 2d 871 (1958) ("No person shall lounge or loiter about any street or street corner in the City of Dunkirk"); State v. Aucoin, 278 A.2d 395 (Me. 1971) ("No person shall loiter in, on, or adjacent to any street, ways, or public places, in the City of Portland. . ."); State v. Caez, 81 N.J. Super. 315, 195 A.2d 496 (1963) ("No person shall loiter, lounge or sleep in or upon any street, park or public place; or in any public building; or obstruct the access to any public building or any part thereof; or obstruct passage through or upon any public street, park or public place." See also Seattle v. Drew, 70 Wash. 2d 405, 423 P.2d 522, 25 A.L.R. 3d 827 (1967); United States ex rel. Newsome v. Malcolm, 492 F.2d 1166 (2d Cir. 1974).